Fernando ARIAS–LOSADA; Rocio Hernandez–Jimeno; Natali Arias Hernandez; Fernando Daniel Arias–Hernandez, Petitioners

v.

ATTORNEY GENERAL OF the UNITED STATES, Respondent.

No. 08–2202.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Aug. 12, 2009.

Opinion filed: Aug. 19, 2009.

Joyce A. Phipps, Esq., Plainfield, NJ, for Petitioners.

Richard M. Evans, Esq., Michelle G. Latour, Esq., Sada Manickam, Esq., Michele Y.F. Sarko, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, SMITH and HARDIMAN, Circuit Judges.

## OPINION

PER CURIAM.

Fernando Jose Arias–Losada, a native and citizen of Colombia, was admitted to the United States in December 1997. His wife and two children joined him here in June 1998. The petitioners were charged with removability under Immigration and

Nationality Act ("INA") § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)], for overstaying their admission period. They admitted the allegations in the Notice to Appear and conceded the charge of removability.

In January 2003, Arias–Losada applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").[1] He testified that, beginning in 1989, members of the Colombian Revolutionary Armed Forces ("the FARC") threatened him because he refused to help recruit "needy people." Although Arias–Losada altered his work schedule to avoid the FARC, he continued to receive threatening phone calls at home. Based on these threats, Arias–Losada changed his work schedule, quit his job, and moved with his family to another city in Colombia. Nevertheless, the FARC discovered his whereabouts and, because he owned his own business, forced him to pay an extortion fee of approximately $400. Despite these incidents, Arias–Losada voluntarily returned to Colombia after traveling to the United States as a tourist in 1993 and 1995. On May 15, 1997, Arias–Losada was assaulted, a gun was put to his head, and he was told that he would be killed if he did not help the FARC recruit new members. After receiving medical treatment for a shoulder injury and broken teeth, Arias–Losada reported the incident to the police, who cautioned that they could not guarantee his safety. He traveled to the United States in December 1997. The FARC then began to call Arias–Losada's wife, seeking his whereabouts. According to Arias–Losada's brother, who is still in Colombia, the FARC continues to look for him.

The Immigration Judge ("IJ") denied Arias–Losada's application for asylum as untimely, and found that he did not establish exceptional or changed circumstances to excuse the filing delay. *See* INA § 208(a)(2)(B) [8 U.S.C. § 1158(a)(2)(B)] (requiring filing within one year of arrival). The IJ also denied the application for withholding of removal, finding that Arias–Losada's experiences did not rise to the level of persecution. With respect to his CAT claim, the IJ found that Arias–Losada failed to establish that he more likely than not would be tortured upon his return to Colombia. Arias–Losada appealed.

The Board of Immigration Appeals ("BIA") dismissed the appeal. The BIA agreed that the asylum application was time-barred and found no clear error in the IJ's determination that Arias–Losada failed to meet the burdens of proof on his withholding and CAT claims. The BIA also refused to consider additional evidence submitted by Arias–Losada on appeal, and concluded that the evidence did not warrant remanding to the IJ. Arias–Losada filed a timely petition for review of the BIA's decision.

■■■ We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a) [8 U.S.C. § 1252(a)].[2] Because the BIA "invoke[d] specific aspects of the IJ's analysis and factfinding in support of [its] conclusions," we review both the decisions of the IJ and the BIA.[3]

---

1. Arias–Losada's wife and children were derivative applicants.

2. To the extent that Arias–Losada challenges the timeliness determination, we lack jurisdiction. *See* INA § 208(a)(3) [8 U.S.C. § 1158(a)(3)]. In addition, we will not consider the denial of CAT relief because Arias–Losada failed to raise the issue in his brief.

*See In re Surrick,* 338 F.3d 224, 237 (3d Cir.2003) (recognizing that if a party fails to raise an issue in his opening brief, the issue is waived).

3. Arias–Losada argues that the Board essentially issued an affirmance without opinion and urges us to review the IJ's decision rather than the BIA's. We decline to do so.

*See Voci v. Gonzales,* 409 F.3d 607, 612–13 (3d Cir.2005). We review the BIA's legal conclusions de novo. *See Briseno–Flores v. Att'y Gen.,* 492 F.3d 226, 228 (3d Cir. 2007). Our review of the factual findings in these decisions is for substantial evidence, considering whether they are supported by reasonable, substantial, and probative evidence on the record considered as a whole.[4] *See Yusupov v. Att'y Gen.,* 518 F.3d 185, 197 (3d Cir.2008). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft,* 333 F.3d 463, 471 (3d Cir.2003) (quoting *Abdille v. Ashcroft,* 242 F.3d 477, 484 (3d Cir.2001)).

For withholding of removal to a particular country under the INA, an applicant must prove that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3). "To meet this test, the alien must demonstrate that there is a greater-than-fifty-percent chance of persecution upon his or her return." *Senathirajah v. INS,* 157 F.3d 210, 215 (3d Cir.1998). "[I]f an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution" standard for withholding of removal. *Zubeda,* 333 F.3d at 469–70. Significantly, "persecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Ahmed v. Ashcroft,* 341 F.3d 214, 217 (3d Cir.2003) (quotations omitted). It "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.*

■ We conclude that substantial evidence supports the BIA's determination that Arias–Losada failed to show that it was more likely than not that he would be persecuted upon returning to Colombia. Arias–Losada testified that he was repeatedly threatened by the FARC, was forced to pay an extortion "fee," and was assaulted one time, all because he refused to cooperate with the FARC's efforts to recruit new members. These incidents occurred between 1989 and 1997. During this period, Arias–Losada traveled to the United States on three occasions, each time voluntarily returning to Colombia. This significantly weakens his claim that he fears persecution. *See Jean v. Gonzales,* 461 F.3d 87, 91 (1st Cir.2006) ("[Jean's] willingness to return voluntarily to Haiti on multiple occasions undermines the contention that Jean experienced persecution and has a well-founded fear of persecution there.").

Furthermore, we agree that Arias–Losada's experiences in Colombia do not rise to the level of persecution or demonstrate a likelihood of future persecution. According to Arias–Losada, FARC members repeatedly threatened to kill him and his family. As a result, Arias–Losada quit his job and moved to another city. But, aside from one incident in which Arias–Losada was assaulted on the street, there is no indication in the record that the FARC attempted to carry out the threats. *See Li v. Att'y Gen.,* 400 F.3d 157, 164 (3d Cir. 2005) (holding that "unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution.") (internal quotation marks and citations omitted). Furthermore, the assault

4. Because our review is confined to the administrative record, INA § 242(b)(4)(A) [8 U.S.C. § 1252(b)(4)(A)], we will not consider the new evidence submitted by Arias–Losada in Appendix II.

itself, while certainly a criminal act, was a one-time incident that did not result in any particularly serious injury. *See Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir.2005) (holding that petitioner's "account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution."). In addition, the record does not demonstrate that the FARC's extortion of $400 from Arias–Losada imposed a "severe economic disadvantage which threaten[ed][his] life or freedom." *Li*, 400 F.3d at 168. Finally, Arias–Losada's testimony concerning the FARC's inquiries into his whereabouts does not constitute substantial evidence sufficient to establish an objectively reasonable fear of future persecution.

■ Arias–Losada argues that the IJ erred by requiring him to establish his withholding of removal claims under the "clear and convincing" standard, rather than the "clear probability" standard. We disagree. There is simply no indication that the IJ applied the "clear and convincing" standard in evaluating Arias–Losada's withholding of removal claim. Arias–Losada also asserts that the IJ failed to properly consider that the "FARC was able to track people and target them," as reported in the 2005 State Department's Report for Human Rights Practices and Country Conditions. We have held that "[i]f the administrative record fails to reveal that [material] evidence has been fairly considered, the proper course is to remand the case ... so that the [IJ] may evaluate such evidence and consider its effect on the application as a whole." *Thu v. Att'y Gen.*, 510 F.3d 405, 412 (3d Cir. 2007) (quoting *Sotto v. INS*, 748 F.2d 832, 837 (3d Cir.1984)). Here, however, the IJ did discuss the Country Report, noting that it indicated that Colombia "is in a virtual state of civil war with various criminal groups, as well as political groups engaged in murders, abductions, and other forms of human rights violations." We see no error in the failure to specifically mention the FARC's ability to "track" and "target" people. *See Toussaint v. Att'y Gen.*, 455 F.3d 409, 416–17 (3d Cir.2006) (concluding that "the BIA did not err in failing to mention specifically" country reports and documentary evidence). Finally, we reject Arias–Losada's request to remand the case "back to the Immigration Court to permit [his] wife and children to file" new applications for protection.

For the foregoing reasons, we will deny the petition for review.