

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2007

# Briseno-Flores v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-5323

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Briseno-Flores v. Atty Gen USA" (2007). 2007 Decisions. Paper 827.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/827

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No:  05-5323
_____

JESUS BRISENO-FLORES,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A74-992-241)
Immigration Judge Donald V. Ferlise

_____

Argued May 8, 2007

Before: RENDELL and  JORDAN, *Circuit Judges*
and VANASKIE*, *District Judge*

(Filed: June 26, 2007 )

_____

Roger R. Laguna, Jr. **[ARGUED]**
Laguna, Reyes & Maloney
1119 North Front Street
Harrisburg, PA 17102
   *Counsel for Petitioner*

Richard M. Evans
Emily A. Radford
David E. Dauenheimer
Blair T. O'Connor
Gjon Juncaj **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, DC   20044

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

   Jesus Briseno-Flores ("Briseno") petitions for review
of the decision of the Board of Immigration Appeals (the

_____
   * Honorable Thomas I. Vanaskie, District Court Judge
for the Middle District of Pennsylvania, sitting by designation

designation"BIA") denying him suspension of deportation under the statute in effect at the time he applied for that relief, § 244(a)(1) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1254(a)(1). For the following reasons, we will deny the petition for review.

I.

On November 16, 1996, the Immigration and Naturalization Service ("INS") commenced deportation proceedings against Briseno, a citizen of Mexico who had entered the United States without inspection on May 15, 1984. Briseno admitted to the allegations against him and was found deportable, but pursued an application for suspension of deportation under the statute then in effect, § 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1). The Immigration Judge rendered an oral decision on July 10, 2000, granting Briseno's application for suspension of deportation.

The INS appealed the Immigration Judge's decision to the BIA. The BIA sustained the appeal, finding that Briseno could not establish the seven years of continuous physical presence required under the statute for eligibility for suspension of deportation. The BIA found that Briseno had committed petty theft on two occasions, in 1985 and 1989, and that, under § 240A(d) of the INA, 8 U.S.C. § 1229b(d) (referred to as the "stop-time" provision), continuous physical presence is deemed to end on the date that a crime is committed. The BIA further stated that an alien does not have to be convicted of a crime to be subject to that provision; it is enough that the alien has committed the crime, regardless of

3

conviction.[1] The BIA remanded the case to the Immigration Judge for "consideration of the respondent's eligibility for any alternative relief from deportation, including voluntary departure."

On remand, Briseno presented new arguments to the Immigration Judge about how the stop-time provision of 8 U.S.C. § 1229b(d) should be calculated. Briseno argued that, rather than counting the seven years from the date he entered the country until the date he committed the various offenses, the seven years should be counted backward from November 16, 1996, the day the Order to Show Cause was issued. The Immigration Judge determined that he could not address those arguments because the BIA had already rejected them, but granted Briseno voluntary departure. Briseno again appealed to the BIA, which affirmed the Immigration Judge's grant of voluntary departure, but denied any other relief. Briseno appeals that decision to this Court.[2]

---

[1] That observation is superfluous, since the record reflects that Briseno pleaded guilty to the crime of petty theft on July 12, 1989 for stealing two bottles of rum from a supermarket in California. Briseno's criminal record, offered as evidence by the INS in the hearings at the administrative level, also reflects a January 17, 1985 guilty plea by Briseno to the crime of petty theft.

[2] Briseno also asks this Court to stay the voluntary departure period granted to him by the BIA. However, based on the language of the regulations, which gives authority to extend the time for voluntary departure only to "the district director, the Deputy Executive Associate Commission for

This Court has jurisdiction to review a final order of removal under 8 U.S.C. § 1252. The BIA's factual findings are reviewed for substantial evidence. 8 U.S.C. § 1252(b)(4)(B). This Court reviews the BIA's legal determinations de novo, subject to the principles of deference articulated in *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984). *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004).

## II.

At oral argument, Briseno's attorney seemed to concede that the arguments made in Briseno's brief were moot, and that if the record showed that Briseno had committed crimes of moral turpitude, he was ineligible for relief. Briseno's attorney stated:

> And so, I think, whether or not, if this Court decides that there was sufficient evidence that, in fact, the acts that the government says are crimes of moral turpitude did in fact happen and they are classified as such, then I believe the rest of the arguments are moot.

---

Detention and Removal, or the Director of the Office of Juvenile Affairs[,]" 8 C.F.R. § 1240.26(f), and for the reasons articulated by this Court in *Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 280 (3d Cir. 2004), we lack jurisdiction to grant such a stay.

5

Oral Argument at 1:38 - 1:57.[3]

It is clear from the record that Briseno pleaded guilty to the crime of petty theft on July 12, 1989 for stealing two bottles of rum from a supermarket in California.  Briseno's criminal record, offered as evidence by the INS in the hearings at the administrative level, also reflect a January 17, 1985 guilty plea by Briseno to the crime of petty theft.  Each of these petty thefts constituted a crime of moral turpitude. *Quilodran-Brau v. Holland*, 232 F.2d 183, 184 (3d Cir. 1956) ("It is well settled as a matter of law that the crime of larceny is one involving moral turpitude regardless of the value of that which is stolen."); *Matter of Scarpulla*, 15 I. & N. Dec. 139, 140-41 (BIA 1974) ("It is well settled that theft or larceny, whether grand or petty, has always been held to involve moral turpitude").  Thus, Briseno stopped accruing a period of continuous physical presence in 1985, and did not achieve the required seven years of presence.  As a result, he is not eligible for suspension of deportation under 8 U.S.C. § 1254.

---

[3] Later in the argument, on questioning from the Court, Briseno's attorney again conceded that point.

> Court: You don't dispute that if ... those things happened, long ago though they may have been, the petty thefts, that's it the way the statute is written, the clock stops and the game is up on that.
>
> Briseno: Yes, your Honor, I think the statute is very clear as it's amended.

Oral Argument at 2:55 - 3:19.

Even if Briseno's attorney did not intend to concede the stop-time arguments made in his brief,[4] however, those arguments are unpersuasive, as further explained below.

## III.

Briseno's claim focuses on the interpretation of two provisions of the INA, § 244(a)(1), found at 8 U.S.C. § 1254(a)(1) (repealed Sept. 30, 1996), and §240A(d), found at 8 U.S.C. § 1229b(d).[5] Section 1254(a)(1) provides that

> [T]he Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien ... who applies to the Attorney General for suspension of deportation and ... has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the

---

[4] Other statements made by Briseno's attorney during argument have left ambiguity about whether any concession was intended, so we deem it best to address the arguments made in the briefing.

[5] For ease of reference, we will hereafter refer to these sections by the section number listed in the United States Code.

> Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence[.]

The issue here is whether Briseno can satisfy the requirement of continuous physical presence for at least seven years immediately preceding the date of his application. That question requires the interpretation of § 1229b(d)(1)(B), which provides that,

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end ... (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

Thus, the commission of, among other things, "a crime of moral turpitude" effectively stops the time which counts toward the calculation of an alien's continuous physical presence in the United States. 8 U.S.C. § 1182(a)(2). Whether Briseno's petty thefts in 1985 and 1989 operate to bar him from relief requires interpretation of both § 1229b(d)(1)(B) and § 1254(a)(1).

A.

8

Briseno first asserts that § 1229b(d)(1)(B) does not apply at all to this case. When Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), it repealed § 1254, and replaced it with § 1229b. While § 1229b generally applies only to cases commenced after April 1, 1997, and thus would not apply to this case, which was commenced in November 1996, some provisions of that act were made retroactive by the IIRIRA and the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), Pub.L. No. 105-100, 111 Stat. 2160 (1997). The NACARA specifically provides that "paragraphs (1) and (2) of section 240A(d) [8 U.S.C. § 1229b(d)] of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause ... issued before, on, or after the date of the enactment of this Act." 111 Stat. 2160, 2196.

In the context of a decision on the retroactivity of § 1229b(d)(1)(A), we held that NACARA makes § 1229b(d)(1) retroactive. *Pinho v. I.N.S.*, 249 F.3d 183, 187 (3d Cir. 2001). That is as true of subsection (B) as it is of subsection (A) of that statute. *See Peralta v. Gonzales*, 441 F.3d 23, 30 (1st Cir. 2006) ("[W]e hold that Congress has expressly mandated that subsection (B) be applied retroactively."); *Tablie v. Gonzales*, 471 F.3d 60, 64 (2d Cir. 2006) (finding § 1229b(d)(1)(B) to be retroactive and denying relief). We thus hold that § 1229b(d)(1)(B) applies to Briseno's request for suspension of deportation under 8 U.S.C. § 1254(a)(1).

B.

9

Briseno next asserts that, even if § 1229b(d)(1)(B) is retroactive, it does not bar the relief he requests. Briseno asserts that the continuous physical presence requirement of § 1254(a)(1) should be read to require a court to look back from the date of the petition to the seven years immediately preceding it, and that only crimes committed within those seven years would bar relief. In essence, Briseno's argument is that the commission of a crime only ends one period of continuous physical presence, and that a new one begins after the crime is committed. Put another way, this would require us to disregard the cessation of continuous presence in 1985, as if that had not occurred, and look only to the seven years prior to the notice to appear. By this reasoning, since any crimes he committed occurred more than seven years before his petition, the rule of § 1229b(d)(1)(B) would not apply to him. We disagree.

In *In re Mendoza-Sandino*, 22 I. & N. Dec. 1236 (2000), the BIA addressed whether, after one of the stop-time events listed in § 1229b(d)(1) occurred, a new period of continuous physical presence could begin. In that opinion, the BIA found that the language of 8 U.S.C. § 1229b(d)(1) "reflects that service of a notice to appear or an Order to Show Cause is not simply an interruptive event that resets the continuous physical presence clock, but is a terminating event, after which continuous physical presence can no longer accrue." *Mendoza*, 22 I. & N. Dec. at 1241. Specifically, *Mendoza* explicitly says that the language of § 240A(d) does not "suggest . . . that another period of continuous physical presence can begin after an alien's presence has been terminated by the service of a charging document or *the commission of a crime*," *id*. at 1241 (emphasis added), and

10

that "the clock cannot be reset so that alien accrues continuous physical presence or continuous residence after the service of an Order to Show Cause or *the commission of a specified crime*," *id*. at 1240 (emphasis added).  The BIA came to that conclusion by analyzing the language of the statutory section and the legislative history.

In analyzing the language of the provision, the BIA found that the reference in § 1229b(d)(1) to "any period" refers not to multiple periods of continuous physical presence for an individual alien, but to the different sub-sections of 8 U.S.C. § 1229b, which require different lengths of continuous physical presence.  *Id*. at 1240-41.  Indeed, § 1229b(a) requires a seven-year period of continuous physical presence, while § 1229b(b)(1) requires a ten-year period, and § 1229b(b)(2) requires a three-year period.  The BIA also relied on the phrase "whichever is earliest" at the end of the section, noting that this language could only mean that the earliest event under § 1229d(b)(1) would permanently terminate the period of continuous physical presence.  *Id*. at 1241.

Because the BIA has addressed this question, its interpretation is entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Under *Chevron*, courts are required to give deference to interpretations of statutes by the agencies that administer them.  Where, as here, an agency interprets a statute, and the interpretation "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."  *Id*. at 845.

11

Therefore, the question before this Court is whether the BIA's interpretation of 8 U.S.C. § 1229b(d) is a reasonable one. *Id*.

We conclude that the BIA's interpretation of the language of § 1229b(d)(1) is reasonable. Indeed, there is persuasive precedent to support it. *See Tablie v. Gonzales*, 471 F.3d 60, 62 (2d Cir. 2006) ("[U]nder § 240A(d)(1) Tablie's period of continuous residence ended in 1984 when he lied on his application for permanent residence, after only five years in the country. Tablie would therefore be ineligible for cancellation of removal under the new stop-time rule."); *Peralta v. Gonzales*, 441 F.3d 23, 25 (1st Cir. 2006) ("We find that IIRIRA's transitional rules (as amended by NACARA) clearly render subsection (B) retroactively applicable. This means his marriage fraud offense stopped his accrual of time, and so he was not eligible for the relief he sought."). Because the BIA's interpretation of § 1229b(d)(1) is reasonable, we will not disturb it.[6] Briseno stopped

---

[6] The reasoning of *Mendoza* has been questioned. *See Okeke v. Gonzales*, 407 F.3d 585, 593 (3d Cir. 2005) (Ambro, J., concurring) ("I ... instead conclude that *Mendoza* is an impermissible reading of § 1229b(d)(1), even after according the BIA the deference called for under *Chevron*[.]") The concurrence in *Okeke* reasons that the "any period" language of § 1229b(d)(1) must refer to multiple periods of continuous physical presence, 407 F.3d at 593-94, and that if Congress had intended to permanently bar relief to aliens who committed specified offenses, it would have enacted a statutory provision that said simply that, *id*. at 594-95. However, for the reasons stated herein, we conclude that the

12

accruing time of continuous physical presence when he committed his first offense in 1985. Thus, he cannot establish seven years of continuous physical presence under § 1254 and is not eligible for relief under that section.

IV.

For the foregoing reasons, we will deny Briseno's petition for review.

---

BIA's interpretation of § 1229b(d)(1) in *Mendoza* is reasonable, even though others may disagree with it. Therefore, under *Chevron*, that interpretation is entitled to deference.