**FREDY, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 08–3674.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Aug. 12, 2009.

Opinion filed: Nov. 24, 2009.

---

Joyce A. Phipps, Esq., Plainfield, NJ, for Fredy.

Andrew J. Oliveira, Esq., Joan E. Smiley, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: MCKEE, NYGAARD and ROTH, Circuit Judges.

OPINION

PER CURIAM.

Petitioner Fredy seeks review of a final order of removal. For the reasons that follow, we will deny the petition for review.

## I.

Fredy is a native and citizen of Indonesia and an ethnic Chinese Christian. He entered the United States in June 2005 on an F–1 student visa to study at a school in Washington, D.C. He filed his I–589 asylum application within the one-year time period. At a hearing before an Immigration Judge ("IJ") in New Jersey, Fredy conceded removability and, in addition to asylum, sought withholding of removal and relief under the Convention Against Torture ("CAT").

Fredy testified that he had been persecuted in Indonesia because of his ethnicity and religion. Specifically, he testified that he experienced harassment and abuse from classmates throughout his childhood. (A.R.187) ("Sometimes they threw rocks at me. When I was in fourth grade, I was beaten up ... When I was [in] sixth grade, I was beaten up right in front of school"). He testified that he had to pay higher tuition for junior high school because he was Chinese, and that classmates would extort money from him. (A.R.189.) Fredy testified that he was beaten by a mob during the 1998 anti-Chinese riots. As they were beating him, the rioters "were screaming Chinese, Chinese, Chinese." (A.R.191.)

Fredy testified that in September 2004, he was riding home from college on a bus when he was pulled off the bus, beaten and robbed. (A.R.183–84.) One of the assailants directed an ethnic slur at him. Fredy went to the police station and filed a report. He testified that he also went to see a doctor after going to the police, and that

"the doctor said there was no serious injury." (A.R.186.) Finally, Fredy testified that the Christian church he attended received arson threats, and that before departing for the United States he heard "that it was not safe to go to church service anymore." (A.R.194, 197.)

The IJ generally found Fredy to be credible, though he had concerns about Fredy's testimony concerning the 2004 robbery. Nonetheless, the IJ determined that Fredy's history of abuse did not rise to the level of persecution, and that he did not have a well-founded fear of future persecution. The IJ thus held that Fredy was ineligible for asylum and withholding of removal. The IJ also held that Fredy had failed to establish eligibility for CAT relief. Fredy was, however, granted voluntary departure.

On appeal, Fredy challenged only the IJ's holding that he was not entitled to asylum. The Board of Immigration Appeals ("BIA") dismissed the appeal. It agreed with the IJ that Fredy had not shown past persecution, as "[h]e was not severely harmed and the incidents he relates appear to be related to criminal behavior or harassment and discrimination." (A.R.3.) On the issue of future persecution, the BIA concluded that although "there are still problems related to differences in religion or ethnicity, there is not sufficient evidence of a pattern of practice by the Government or a group the Government is unable or unwilling to control." (A.R.3.) The BIA also concluded that Fredy had failed to meet "his burden for CAT protection, as the record does not establish that it is more likely than not that he will be subject to torture upon return to Indonesia by or with the acquiescence of the government." (A.R.3.) Fredy then filed this petition for review.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). *Abdulai v. Ashcroft*, 239 F.3d 542, 547 (3d Cir.2001).[1] "[W]hen the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and BIA." *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir.2004). We review factual findings for substantial evidence, *see Briseno–Flores v. Att'y Gen.*, 492 F.3d 226, 228 (3d Cir.2007), upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.2003) (en banc).

## III.

The central claim advanced in Fredy's brief is that "[t]he incidents and attacks

---

1. The Government argues that we lack jurisdiction over any claims by Fredy regarding withholding of removal and CAT relief because he failed to raise them before the BIA. While an alien must "raise or exhaust his or her remedies as to each claim or ground for relief [before the BIA] if he or she is to preserve the right of judicial review of that claim," *Hoxha v. Holder*, 559 F.3d 157, 159 (3d Cir.2009), it is also true that our exercise of jurisdiction over a particular claim is unhindered when the BIA considers that claim *sua sponte*. *See Lin v. Att'y Gen.*, 543 F.3d 114, 123–25 (3d Cir.2008). The BIA expressly considered Fredy's eligibility for asylum, withholding of removal and deferral of removal under the CAT. (A.R.2–3.) Therefore, we would ordinarily retain jurisdiction over claims alleging general entitlement to those forms of relief. Nevertheless, the Government is correct that Fredy's failure to raise issues concerning withholding of removal and CAT relief in his opening brief in this Court constitutes a waiver of those issues. *See Chen v. Ashcroft*, 381 F.3d 221, 235 (3d Cir.2004).

suffered by petitioner[, by themselves or] considered in the aggregate[,] do rise to the level of persecution" for purposes of meeting the asylum standard. (Pet. Br. at 5.)[2] To obtain asylum as a refugee, Fredy must show that he "is unable or unwilling to return to [his country of nationality] . . . because of persecution or a well-founded fear of persecution." 8 U.S.C. § 1101(a)(42). "In order to establish persecution, an applicant must 'show past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control.'" *Valdiviezo–Galdamez v. Att'y Gen.*, 502 F.3d 285, 288 (3d Cir.2007) (quotation omitted). Race, religion and nationality are all privileged grounds. *See* 8 U.S.C. § 1101(a)(42)(A).

We agree with both the IJ and BIA that Fredy does not meet the asylum standard. Even presuming the veracity of Fredy's entire testimony, the incidents of physical and verbal abuse as he describes them, whether standing alone or in the aggregate, do not rise to the level of persecution. *See Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir.2003) ("persecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom'") (quotation omitted); *see also Wong v. Att'y Gen.*, 539 F.3d 225, 232 (3d Cir.2008); *Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir.2005) (holding that ethnic Chinese Indonesian's

"account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution").

But even if they did rise to the level of persecution, there is insufficient evidence to demonstrate that the incidents described by Fredy were perpetrated by "forces the government is unable or unwilling to control." *Valdiviezo–Galdamez*, 502 F.3d at 288; *see Abdille v. Ashcroft*, 242 F.3d 477, 494–95 (3d Cir.2001) ("[m]ere generalized lawlessness and violence between diverse populations . . . generally is not sufficient o permit the Attorney General to grant asylum . . ."). Contrary to Fredy's assertions, the post-*Lie* background materials incorporated into the record (A.R.231–71, 275–304), which vary greatly in terms of relevance, do not affect this conclusion.

Accordingly, we will deny the petition for review. Fredy's motion to expand the record is denied.

---

2. Fredy advances two subsidiary claims as well: the first accuses the IJ of applying the wrong standard for assessing his asylum claim (Pet. Br. at 4–7), and the second suggests that we should only review the IJ's opinion because the BIA's decision "merely reflects the judgment of the Immigration Judge and does not provide any analysis of his opinion." (Pet. Br. at 8.) Both claims are wholly without merit; the IJ did not use the wrong asylum standard (A.R.109–111) and, for the reason set forth above, we review both the IJ and BIA decisions.