IMG-123                                                        NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2315
_____

KWAME DENSU,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                        Respondent


_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098 496 580)
Immigration Judge:  Honorable Frederic G. Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 17, 2010

Before:   MCKEE, Chief Judge, HARDIMAN AND COWEN, Circuit Judges

(Opinion filed: June 9, 2010)
_____

OPINION
_____

PER CURIAM

        Kwame Densu, a citizen of Ghana, entered the United States in July 2004 with

authorization to remain for six months.  He overstayed his period of admission and was

charged with removability pursuant to Immigration and Nationality Act ("INA")

§ 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)]. Densu conceded that he was removable as an overstay, and sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").

In his asylum application, Densu explained that he is Christian, like his mother, but that his father and his father's family followed "the old tribal religion." Administrative Record ("A.R."), 364. Densu asserted that his father's family ("the elders"), who are from "a chief clan in the Adangbe tribe," "have the power of government." A.R. 364-65. When his father died in 2000, the elders placed a sacred idol in his mother's bedroom.[1] As Christians, both Densu and his mother believed that worshiping the idol was wrong. The elders refused to remove the idol, however, so Densu destroyed it. He then traveled to the United States. Densu's brother, who was in Ghana, warned Densu not to return because the elders had decided that he should be killed for destroying the idol. In March 2007, the elders placed a "Public Notice" in *The Ghanaian Times*, which stated: "Elders of Adjatey Samasle Family of Doryumu are looking for the Grandson KWAME DENSU for questioning for allegedly destroying their ancestral legacy idols. Any knowledge concerning his whereabouts must be reported to the family head." A.R. 351. The notice included a photograph of Densu.

The IJ denied relief, finding that Densu's asylum application was untimely, that

---

[1] The idol, which was over 100 years old, "was a statute, made of animal bones and cloth, which looked like a bull."

there were "significant credibility issues in this case," and that, even if credible, the death threat from the elders did not constitute persecution. The BIA dismissed Densu's appeal. It concluded that Densu had not identified any factual or legal errors in the IJ's adverse credibility determination. The BIA also stated that the elders' threats were not so menacing as to constitute persecution and that Densu failed to demonstrate that the police or government would be unable to protect him. Densu filed a timely petition for review.

We have jurisdiction under INA § 242 [8 U.S.C. § 1252].[2] Contrary to Densu's assertion that the Board essentially issued an affirmance without opinion, we conclude that "the BIA both adopt[ed] the findings of the IJ and discusse[d] some of the bases for the IJ's decision." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Therefore, "we have authority to review the decisions of both the IJ and the BIA." Id. We review the BIA's and IJ's factual findings for substantial evidence. See Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007). "The [IJ's and] BIA's determination will not be disturbed unless any reasonable adjudicator would be compelled to conclude to the contrary." Yu v. Att'y Gen., 513 F. 3d 346, 348 (3d Cir. 2008) (quotation omitted).

_____

[2] We lack jurisdiction to review the IJ's determination that Densu's asylum application was untimely. See INA § 208(a)(3) (stating that "[n]o court shall have jurisdiction to review any determination of the Attorney General" relating to the timeliness of an asylum application); Sukwanputra v. Gonzales, 434 F.3d 627, 632-33 (3d Cir. 2006). In addition, we note that Densu does not challenge the adverse credibility findings or the denial of relief under the CAT. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005) (concluding that appeal of alien's CAT claim was waived where she failed to raise any argument regarding the denial of that claim in her brief).

For withholding of removal to a particular country under the INA, an applicant must prove that his life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3) [8 U.S.C. § 1231(b)(3)]. "To meet this test, the alien must demonstrate that there is a greater-than-fifty-percent chance of persecution upon his or her return." Senathiraja v. INS, 157 F.3d 210, 215 (3d Cir. 1998). An alien can meet the withholding of removal standard by demonstrating past persecution or by showing a likelihood of future persecution. See 8 C.F.R. § 1208.16(b). Significantly, "persecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quotation omitted). Indeed, "[i]t is established . . . that threats standing alone . . . constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." Li v. Att'y Gen., 400 F.3d 157, 164 (3d Cir. 2005) (internal citations and quotations omitted). Unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution. Id.

We agree with the BIA that the record does not compel a finding that Densu established a clear probability that his life or freedom would be threatened on account of a protected ground. At a relative's funeral, Densu's brother learned that the elders "insist[ed] to lynch out capital punishment on [Densu]" for destroying the idol. A.R. 217.

4

Densu's brother repeatedly warned Densu of this threat, first calling him in December 2004, then sending a message via audio cassette tape in July 2005, and finally writing a letter in November 2005. Based on these warnings, Densu cancelled plans to return to Ghana and began the process of seeking asylum. In March 2007, the "Public Notice" seeking Densu's whereabouts was published in *The Ghanaian Times*. Importantly, though, the most recent effort to determine Densu's whereabouts – the publication of the "Public Notice" in *The Ghanaian Times* – occurred approximately three years ago, and Densu has not alleged that the elders are actively looking for him. In fact, Densu's brother stated that the elders "are of age . . . [and] I believe with time their anger will be swallowed down [by] their age." A.R. 216. Under these circumstances, we conclude that the threat did not result in "highly imminent" or concrete harm to Densu. See Li, 400 F.3d at 165 (holding that "unfulfilled threats, even death threats, [do] not qualify as past persecution unless highly imminent").

Densu argues that the IJ inappropriately characterized his fear as a "family problem." Both the BIA and the IJ accurately noted, however, that Densu's claim was based on his religion and his membership in a particular social group consisting of his family. Densu also asserts that the IJ failed to "valid[ly] analy[ze]" the background material he submitted, noting that the 2006 State Department Country Report, the 2007 International Freedom Report, and the British Home Office Science and Research Group Report "all . . . detailed the problem of the continuance of tribal authority within the midst

5

of a modern state." Densu also emphasizes that he presented a letter from the Office of Country Affairs and Asylum for the Department of Homeland Security, which concerned "the enthronement of a tribal leader chief and the importance of the tribal connections in Ghana." But the IJ's oral decision specifically discussed each of these documents and acknowledged that "the focus is on [the tribe as] a governmental entity." A.R. 24. The IJ thus accepted Densu's claim that "tribal government is a parallel form of government in Ghana," but properly concluded that "the threats alone . . . without more are not sufficient despite the repugnant nature of those threats." A.R. 31.

For the above-stated reasons, we will deny the petition for review.