**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1924
_____

ALOYSIOUS ALLIE CONTEH,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
SECRETARY DEPARTMENT OF HOMELAND SECURITY
                                        Respondents

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A029-850-629)
Immigration Judge:  Honorable Robert P. Owens

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 23, 2011
Before:  SMITH, HARDIMAN and STAPLETON, Circuit Judges

(Opinion filed: November 23, 2011)
_____

OPINION
_____

PER CURIAM

Aloysious Allie Conteh petitions for review of an order of the Board of

Immigration Appeals ("BIA"), which dismissed his appeal from an Immigration Judge's

("IJ") final removal order.  We will deny the petition for review.

I.

Because the parties are familiar with the history and facts of the case, we will recount the events in summary fashion. Conteh, a native and citizen of Sierra Leone, was admitted to the United States on December 7, 1988, as a non-immigrant visitor with authorization to remain for six months. Conteh overstayed his visitor's visa, and in October 1993 he was served with an Order to Show Cause ("OSC") and charged as deportable**.**

Conteh conceded deportability, but sought asylum and related relief. In February 1996, the IJ denied Conteh asylum, but granted him voluntary departure. Conteh appealed to the BIA. Due to an inability to locate or recreate the record of the Immigration Court proceedings, the BIA administratively closed Conteh's case in 2002. In 2004, the BIA remanded the case to the IJ on the Government's motion for a de novo hearing on the merits, and in 2006 the IJ granted Conteh asylum. The Government appealed, and the BIA held Conteh was ineligible for asylum, but remanded the case for the IJ to consider whether to grant Conteh voluntary departure. The IJ denied voluntary departure. Conteh appealed, filed a motion to remand, and argued he was eligible for suspension of deportation.[1] In August 2008, the BIA granted Conteh's motion to remand.

Before the IJ, Conteh argued that the "stop-time" provision, enacted by the Illegal

---

[1] Former section 244(a) of the Immigration and Nationality Act ("INA") provided that a non-permanent resident could apply for discretionary suspension of deportation if he could show, among other things, continuous physical presence in the United States for the seven years preceding his application (or ten years, if he was deportable for certain

Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and codified at 8 U.S.C. § 1229b(d), would be impermissibly retroactive if applied to his request for suspension of deportation.[2] The IJ disagreed, and held Conteh was ineligible for suspension of deportation because his receipt of the OSC in 1993 stopped the time accrual of continuous physical presence. Conteh appealed to the BIA, renewing his argument that the stop-time rule was impermissibly retroactive. The BIA rejected the retroactivity argument and held that Conteh was ineligible for suspension of deportation because he could not establish the required seven years of continuous physical presence. See 8 U.S.C. § 1254(a)(1) (repealed). Conteh filed a timely petition for review.

## II.

Conteh argues in his brief that (1) the BIA's application of the stop-time rule is impermissibly retroactive; (2) even if the stop-time provision is applied, he has established sufficient physical presence to qualify for suspension of deportation; and (3) his conviction does not render him ineligible for suspension of deportation. Conteh's

criminal offenses). INA § 244(a) [8 U.S.C. § 1254(a) (repealed 1996)]

[2] The "stop-time" provision terminated the accumulation of continuous physical presence "when the alien is served a notice to appear." 8 U.S.C. § 1229b(d); see generally Pinho v. INS, 249 F.3d 183, 188 (3d Cir. 2001). Section 309(c)(5) of IIRIRA provided that the stop-time provisions "shall apply to notices to appear issued before, on or after the date of the enactment of this Act." However, that section did not specifically refer to "Orders to Show Cause," which is the means by which deportation proceedings were initiated before the enactment of IIRIRA. Pinho, 249 F.3d at 187. The Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), Pub. L. No. 105-100, 111 Stat. 2160 (1997) clarified that the stop-time provisions "shall apply to orders to show cause . . . issued before, on, or after the date of the enactment of this Act." 111 Stat. 2160, 2196; Briseno-Flores v. Att'y Gen., 492 F.3d 226, 229-30 (3d Cir. 2007).

first argument fails based on our holdings in other cases that imposition of the stop-time provision is not impermissibly retroactive. We also reject Conteh's argument that he has met the physical presence requirement. Because Conteh has not accrued the required continuous physical presence, we need not reach Conteh's argument that his conviction does not prevent him from eligibility for suspension of deportation.

In <u>Pinho</u>, we applied the familiar analysis of <u>Landgraf v. USI Film Products</u>, 511 U.S. 244 (1994), and held that the plain meaning of IIRIRA and NACARA "establishe[d] Congress's intent to apply the stop-time rule to all cases, including those pending"[3] as of IIRIRA's enactment. 249 F.3d at 188. Under <u>Landgraf</u>, where Congress's intent to apply a statute retroactively is clear, the presumption against retroactivity does not apply. <u>Pinho</u>, 249 F.3d at 188. We further held that retroactive application of the stop-time rule to applications for suspension of deportation does not violate an applicant's due process rights because it does not impair any vested rights. <u>See</u> <u>Pinho</u>, 249 F.3d at 188-89. Conteh argues that the reasoning of <u>Pinho</u> is no longer valid because it was decided before <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001). In <u>St. Cyr</u>, however, the Supreme Court considered whether Congress's repeal of INA § 212(c) was impermissibly retroactive as applied to aliens who pleaded guilty to crimes that made them deportable but who otherwise would have been eligible for a § 212(c) waiver at the time of their plea. <u>Id.</u> at 315-26. The Court held that Congress's intentions concerning whether the repeal of

---

[3] Conteh did not apply for suspension of deportation until 2009, well after the passage of IIRIRA; thus, the provisions of IIRIRA arguably were not applied to him retroactively at

4

§ 212(c) relief was to be applied retroactively was ambiguous, and that the statute imposed an impermissible retroactive effect on certain aliens. Id. Although the Court in St. Cyr found certain portions of the IIRIRA ambiguous, the Court made no comment regarding IIRIRA § 309(c)(5), at issue here. In fact, that section, which provides that the stop-time provision "shall apply to notices to appear issued before, on, or after the date of the enactment of this Act," is remarkably similar to other provisions of IIRIRA that the Court in St. Cyr found unambiguous. See St. Cyr, 533 U.S. at 319 and n 43 (citing several sections of IIRIRA that contain "before, on, or after" language). Conteh's case has nothing to do with eligibility for a § 212(c) waiver, and St. Cyr does not somehow overrule Pinho.

Moreover, this Court's decisions since St. Cyr make clear that the relevant holding of Pinho still stands. See Arca-Pineda v. Att'y Gen. of the U.S., 527 F.3d 101, 107 (3d Cir. 2008) (relying on Pinho to reject a due process challenge to the retroactive application of the stop-time rule); Briseno-Flores v. Att'y Gen. of the U.S., 492 F.3d 226, 230 (3d Cir. 2007) (relying in part on the validity of Pinho in holding that 8 U.S.C. § 1229b(d)(1)(B)—which provides that the commission of certain crimes stops the clock—applies retroactively in cases where aliens seek suspension of deportation). Accordingly, Conteh's argument is meritless.

Conteh next argues that even if the stop-time rule applies and the clock stops upon service of the OSC, the clock should start running again if there are delays in immigration

all.

proceedings not attributable to the alien.  Additionally, he argues that the OSC should not be considered served until the Immigration Court receives it.  In rejecting Conteh's argument, the BIA explained that service of the OSC ends the period for accruing continuous physical presence, and that once that event occurs, the clock cannot be restarted.  The BIA cited In re Mendoza-Sandino, 22 I. & N. Dec. 1236, 1241 (BIA 2000), to support its conclusion.  In Briseno-Flores, this Court concluded that the holding of Mendoza-Sandino—i.e., that once the clock is stopped, it cannot be restarted—is entitled to Chevron[4] deference.  Briseno-Flores, 492 F.3d at 231.  Conteh was admitted to the United States on December 7, 1988, and, according to Conteh, the Immigration Court received the OSC on April 20, 1994.  Applying the Mendoza-Sandino rule, even if Conteh is correct that the clock did not stop until the Immigration Court received the OSC, he still only accrued a bit over five years of physical presence—well short of the required seven years.  Conteh attempts to add on the time period of February 22, 2002 to March 9, 2004, the time during which his case was administratively closed because the record of proceedings was missing.  Conteh provides no support for his contention that the period of "continuous" presence can be restarted due to delays in the administrative proceedings, and, as noted, we held in Briseno-Flores that once service of the OSC stops the accrual of physical presence, the "clock" cannot be restarted.  492 F.3d at 231; see also Pinho, 249 F.3d at 189, n.5 (denying petition for review despite fact that petitioners would have been eligible for suspension of deportation if not for significant delay that

---

[4] Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

6

resulted in BIA decision occurring after stop-time rule went into effect).

For the foregoing reasons, we will deny the petition for review.