**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3877
_____

MACARIO MELENDEZ,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-702-432 )
Immigration Judge:  Honorable Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 16, 2012

Before: FUENTES, JORDAN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 23, 2012)
_____

OPINION
_____

PER CURIAM

        Petitioner Macario Melendez, a native of El Salvador, seeks review of a final order

of removal.  For the reasons that follow, we will deny the petition for review.

I.

Macario Melendez entered the United States in July 2000 on a tourist visa and failed to depart before his visa expired. After the Department of Homeland Security ("DHS") commenced removal proceedings in 2007, Melendez initially applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In October 2007, Melendez withdrew his application for asylum and requested voluntary departure in the alternative.

After multiple continuances and two motions to reopen, Melendez appeared before the immigration judge ("IJ") for a hearing in January 2010. Melendez presented evidence that he started a business in El Salvador in 1992 distributing construction and building materials. Around the year 2000, he become the victim of harassment from members of the Mara 18 gang, who stole supplies and defaced his property. He received an anonymous note demanding money and threatening his family if he reported it to the police. Approximately one month after receiving the note, as he drove home from an FMLN[1] political meeting, he was stopped by armed men who demanded $40,000. He testified that the men gave him until the next day to get the money, and threatened him and his family. Melendez decided to leave the country because he could not pay the money and because there was nowhere in his country where he could go to escape the Maras. His son was also assaulted and targeted for recruitment by the Maras three or

---

[1] Farabundo Marti National Liberation Front

2

four years after Melendez left the country. Melendez testified that he fears the Maras if he is returned to El Salvador.

The Immigration Judge ("IJ") marked into evidence Melendez's asylum application and supporting documentation, but noted that Melendez had not filed the asylum application within one year of arriving in the United States. The IJ assumed Melendez's testimony was credible, but nevertheless denied relief, finding that Melendez failed to show that the abuse he suffered was on account of his political opinion or membership in a particular social group. In particular, the IJ found that the record did not support his claim that he was targeted because of his membership in the FMLN. The IJ also determined that his small business ownership did not make him part of a "particular social group," and that the record showed that the Maras' motivation was purely financial. Additionally, the IJ noted that Melendez failed to provide any evidence to corroborate his story—including any evidence of his business ownership or FMLN membership, evidence that the Maras knew he was a business owner, or affidavits supporting his story of harassment—and did not testify that such evidence was impossible to obtain. Finally, the IJ determined there was no connection between Melendez's son's attack and the harassment Melendez suffered. The IJ concluded that Melendez failed to meet the burden of proof for withholding of removal or CAT relief, and granted his application for voluntary departure.

In September 2011, the Board of Immigration Appeals ("BIA") dismissed Melendez's appeal. Melendez filed a timely petition for review. We will deny the petition.

## II.

To the extent Melendez sought asylum relief, we lack jurisdiction under 8 U.S.C. § 1158(a)(3) to review the denial of his asylum application as untimely. We do, however, retain jurisdiction to consider the denial of his applications for withholding of removal and protection under the CAT. Tarrawally v. Ashcroft, 338 F.3d 180, 185-86 (3d Cir. 2003). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We review factual findings for substantial evidence, see Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007), upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

## III.

To qualify for withholding of removal, an alien must establish that it is more likely than not that his "life or freedom would be threatened in th[e] country [of removal] because of the alien's race, religion, nationality, membership in a political group or political opinion." 8 U.S.C. § 1231(b)(3)(A); Tarrawally, 338 F.3d at 186. To be eligible

4

for CAT relief, an alien must show that it is more likely than not that he will be tortured if removed to the country in question by or at the instigation of, or with the consent or acquiescence of, a public official. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 64-65 (3d Cir. 2007).

The IJ and BIA concluded that Melendez failed to show the requisite nexus between the threats he experienced and his political opinion or social group. The only detail in the record relating to Melendez's political activities is the fact that the Maras stopped him on his way home from an FMLN meeting. His testimony was only that they demanded money and threatened him and his family, not that their message to him related to his political opinion or associations. The note he received also demanded money and threatened him, but said nothing about his political activities. Thus, substantial evidence supports the IJ's and BIA's conclusion that Melendez failed to show that the Maras targeted him for any reason other than a "bare desire for money." See Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007).

Melendez argues that the IJ and BIA erred in finding that he was not a member of a particular social group, and relies on Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582 (3d Cir. 2011). In that case, we held that BIA opinions defining a "particular social groups" in terms of "social visibility" and "particularity" were inconsistent with prior BIA opinions and were not entitled to Chevron deference. Id. at 608-09. In this case, the BIA did not have the benefit of Valdiviezo-Galdamez, and it rejected Melendez's purported social group using the social visibility and particularity grounds.

5

However, as the government argues, in affirming the IJ, the BIA primarily relied on the finding that Melendez had failed to establish a nexus to a protected ground. The IJ and BIA both concluded that the people who threatened and attempted to extort money from Melendez did so with a criminal purpose for financial gain. Melendez was unable to prove or explain how the Maras knew he owned a business. Additionally, he has not challenged the IJ's and BIA's finding that he failed to substantiate the abuse, or even the existence of his business and property ownership. Accordingly, we hold the BIA's conclusion to be reasonable, and any error in its analysis of Melendez's social group claim is not determinative. See Ndayshimiye v. Att'y Gen., 557 F.3d 124, 134 (3d Cir. 2009) (affirming BIA despite its failure to consider a "social group" claim where BIA properly concluded that the social group background played no central role in persecution).[2]

Finally, Melendez argues that Mara gang violence is widespread in El Salvador, and asserts that they target business owners for extortion. He claims that the prevalence of such activity constitutes a pattern or practice of persecution, and that it is more likely than not that he will be persecuted if removed to El Salvador. If an alien cannot demonstrate past persecution, he can still be eligible for withholding of removal by

---

[2] We note that other circuits have declined to label business owners as "particular social groups." See, e.g., Khozhaynova v. Holder, 641 F.3d 187, 195 (6th Cir. 2011) (business owners who refuse to pay protection money to mafia do not constitute a social group); Ochoa v. Gonzales, 406 F.3d 1166, 1171 (9th Cir. 2005) (business owners in Colombia who resist narco-traffickers' demands is too broad to qualify as "particularized").

6

demonstrating that there is a pattern or practice of persecution of a group of similarly situated persons in that country. See 8 C.F.R. § 1208.16(b)(2)(i); Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d Cir. 2006). The BIA reasonably rejected this claim, given that Melendez failed to connect the Maras' actions against him to his status as a business owner.

We agree that Melendez failed to prove that it was more likely than not that his life or freedom would be threatened on account of one of the protected grounds. Given these facts, substantial evidence supports the IJ's and BIA's determination that Melendez does not qualify for withholding of removal, and nothing in the record supports his claim for CAT protection. Accordingly, we will deny the petition for review.