OPINION OF THE COURT
AMBRO, Circuit Judge.
Li Rong Zhang petitions for review of an order of the Board of Immigration Appeals affirming an Immigration Judge’s order removing her to the People’s Republic of China. For the reasons noted below, her petition for review is denied.[1]
I.
Because we write for the parties, we recite only briefly the facts of the case. Zhang is a single woman who was born on November 15, 1986 in Fujien Province, China. She entered the United States without proper entry documentation on December 8, 2005, at or near Los Angeles, California. Zhang was placed into removal proceedings by the service of a notice to appear, dated December 15, 2005, charging her as removable. Nine months later, Zhang filed for asylum, withholding of removal, and protection under the Convention Against Torture (“CAT”). Conceding that she is removable as charged, Zhang contended that she is entitled to relief from removal because she suffered past persecution when the head of her village, Chung Li, attempted to coerce her to marry his son, Guang Li. Specifically, Zhang testified that Li threatened to put her in jail if she did not marry his son. However, Zhang admitted that she was not arrested, held or tortured in China, and that she was able to escape from her village. Zhang also claimed that her parents were persecuted and fined for violating China’s one-child policy, and that, as a result, she was forced to live "with her grandparents. Within days after Li first attempted to coerce her to marry his son, Zhang went to live with her aunt, with whom she stayed undetected for approximately 20 days before leaving China for Hong Kong, then Europe, and ultimately the United States.
The IJ made an adverse credibility finding against Zhang, noting, among other things, that “Chinese law has forbidden coerced marriage since 1950,” and held that she had failed to establish that she suffered past persecution or that she would suffer future persecution. The IJ explained, in pertinent part, as follows:
[B]ased on the testimony of the respondent[,] [e]ven if one were to find her testimony credible, the Court would find that she has not suffered past persecution. She was not forced into a marriage. She was not detained. [A] [mjarriage proposal, even by someone you detest, does not rise to the level of persecution. Respondent’s family was not involved in this threat.... This was strictly, if you were to believe the respondent, the village head making proposals to her on behalf of his son. And even though he was a powerful individual, according to the respondent, the Court finds the proposals do not rise to the level of persecution. Respondent’s testimony regarding being taken away from her home and being threatened with detention is unsupported by any credible evidence and again, the respondent was able to escape and live with a relative undetected.
With respect to future persecution, the respondent has been away from China for more than two years. It is inconceivable that the village head is still looking for her to marry his son. The respondent certainly could not have been the only single woman in the village. There is no evidence that the village head remains interested in hav *257 ing the respondent as a daughter-in-law. Th[e] statement that she would be forced to marry the son of the village head, were she to return to China, is purely speculative.
The IJ denied her applications on April 14, 2008.
On March 9, 2009, the BIA dismissed Zhang’s appeal, stating that “[f]or all the reasons noted by the [IJ], we agree that [Zhang] failed to carry her burden of establishing that she has suffered past persecution or has a well-founded fear of future persecution on account of her race, religion, nationality, membership in a particular social group, or political opinion.” Zhang’s petition for review is now before us.
II.
We have jurisdiction under 8 U.S.C. § 1252(a). In this case, because the BIA issued its own opinion on the merits, we review its decision rather than that of the IJ. Li v. Att’y Gen., 400 F.3d 157, 162 (3d Cir.2005). However, to the extent that the BIA deferred to or adopted the IJ’s reasoning, we will look to and consider the decision of the IJ on those points. Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir.2006).
We review factual findings under the substantial evidence standard, Briseno-Flores v. Att’y Gen., 492 F.3d 226, 228 (3d Cir.2007), upholding them “unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B). Legal conclusions, including the application of law to fact, are reviewed de novo. Francois v. Gonzales, 448 F.3d 645, 648 (3d Cir.2006). “So long as the BIA’s decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole,’ we will not disturb the BIA’s disposition of the case.” Chavarria, 446 F.3d at 515 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).
III.
Substantial evidence supports the BIA’s decision. While Zhang contends that she was persecuted when the village chief attempted to coerce her into marrying his son, and that she suffered this persecution on account of her membership in a particular social group,[2] the alleged *258 wrongs here do not rise to the level of persecution.
Persecution is defined as “threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.” Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir.1993). Persecution “does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional.” Id.
Here, Zhang was not forced into marriage. She received two allegedly coercive marriage proposals and was threatened with detention. But she was not forced to marry Li’s son against her will, she was not detained, and she was able to escape the perceived threat and reside •with her aunt in another part of China without being detected. As for Zhang’s claimed fear of future persecution, we agree with the IJ that, without substantial further evidence, “[i]t is inconceivable that the village head is still looking for her to marry his son” several years later. Without evidence showing a reasonable likelihood that Zhang experienced past persecution or has a well-founded fear of future persecution, see 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A), we agree with the IJ and BIA that she has failed to demonstrate that she qualifies for asylum.
Zhang’s failure to meet the test for asylum necessarily precludes her from meeting the more stringent standard for withholding of removal. See Yu v. Att’y Gen., 513 F.3d 346, 349 (3d Cir.2008). We also agree that Zhang failed to establish eligibility for protection under the CAT. See 8 C.F.R. § 208.16(c).
In sum, the evidence in this case does not compel us to overturn the agency’s decision to deny Zhang’s claims. We therefore deny the petition for review.[3]

. We thank amicus curiae counsel, Ayodele Gansallo of the Transnational Legal Clinic at the University of Pennsylvania Law School, for superb advocacy in this case.

. The IJ defined the possible particular social group as "single women” or "single women whose parents oppose [China’s] family planning policy.” Oral Decision and Order of the IJ at 15. On appeal to the BIA, the particular social group is defined as "people who are forced into marriage by someone other than [their] parents.” Decision of the BIA at 2. Before us, the Government and amicus defined the particular social group as "women who are forced into marriage by someone other than their parents.” Gov't Supplemental Letter Br. at 6-7; Amicus Supplemental Letter Br. at 1. Amicus also raises two other potential definitions: "women in China” and "women in China who are opposed to the practice of forced marriage.” Amicus Supplemental Letter Br. at 2 n. 4.
We do not pass judgment on whether any of these definitions could constitute a particular social group, nor on whether Zhang would be a member of any such particular social group. We do note, however, that two Courts of Appeals have indicated that those forced into marriage possibly could constitute a particular social group. See Gao v. Gonzales, 440 F.3d 62, 69 (2d Cir.2006) (holding that the relevant social group was "women who have been sold into marriage (whether or not that marriage has yet taken place) and who live in a part of China where forced marriages are considered valid and enforceable”), vacated and remanded on other grounds by Keisler v. Hong Yin Gao, 552 U.S. 801, 128 S.Ct. 345, 169 L.Ed.2d 2 (2007); Bi Xia Qu v. Holder, 618 F.3d 602, 607 (6th Cir.2010) (”[I]t appears that [the petitioner] has shown that she was a member of a particular social group of women in China who have been subjected to forced marriage and involuntary servitude.”).

. Contrary to our dissenting colleague's characterization, the Government does not "agree that a remand is needed to correct [the BIA's] errors" with respect to the particular social group issue. Rather, it seeks denial of the petition for review, contending, among other things, that "the social group issue need not be reached because the agency’s determination that Zhang failed to establish a well-founded fear of future arranged marriage disposes of the asylum and withholding of removal claims and moots the social group issue.” Gov’t Supplemental Letter Br. at 1. As explained above, we agree with the Government that the particular social group issue need not be reached because of Zhang’s inability to establish a reasonable likelihood of past or future persecution.