**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1954
_____

GIVI TERENTIEV,
                                        Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review from an Order of the
Board of Immigration Appeals
(Board No. A213-090-789)
Immigration Judge: Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 30, 2019
_____

Before: RESTREPO, ROTH, and FISHER, *Circuit Judges*.

(Filed: October 11, 2019)
_____

OPINION[*]
_____

---

[*] This disposition is not an Opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Petitioner Givi Terentiev, a Georgian citizen, seeks review of the Board of Immigration Appeals' ("BIA's") affirmance of the Immigration Judge's ("IJ's") final order of removal and dismissal of his withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(A). Terentiev argues that the BIA erred in mischaracterizing the Immigration Court record. For the reasons that follow, we will deny the petition for review.

## I.

Terentiev identifies as ethnically Russian. In 2008, military conflict broke out between Russia and Georgia. As a result, Terentiev claims that Georgian attitudes towards Russians changed, making him the target of several criminal incidents in Georgia starting in 2009. He also claims the police became less responsive to crimes targeting his business.

First, one of Terentiev's businesses was set on fire. Terentiev submitted a report and written complaint to the police but they did not investigate. Second, a pipe bomb was placed in the same business. The police removed the pipe bomb but took no further action. Third, Terentiev was the victim of an armed robbery. The police reportedly "did nothing." Pet. Br. 16. Fourth, Terentiev and his family were reportedly the target of many verbal and physical attacks by their neighbors. These incidents included cursing, threats, and having eggs, a brick, and "Molotov cocktail" explosives thrown at his house. Terentiev reported these incidents to the police and fire department, but no investigation followed.

2

On March 9, 2016, after multiple attempts to emigrate from Georgia, Terentiev entered the United States and overstayed his tourist visa. Terentiev was subsequently arrested for a driving violation, at which time he did not possess valid immigration documents. He was placed in removal proceedings in accordance with 8 U.S.C. §1227(a)(1)(B) and summoned to appear before the York Immigration Court. At his first hearing, Terentiev filed an I-589 form requesting asylum, statutory withholding of removal, and protection under the Convention Against Torture ("CAT"). His request was amended to include allegations of persecution based on political opinion and membership in a particular social group.

The IJ denied Terentiev's claims for asylum, withholding of removal, and protection under CAT on the ground that his allegations did not rise to the level of persecution. The IJ clarified that Terentiev's asylum application was untimely and that he was ineligible for CAT protection because it was unlikely he would be tortured by the Georgian government upon return. The BIA affirmed the IJ's decision.[1] Terentiev now appeals.

## II.

We have jurisdiction under 8 U.S.C. § 1252 to review a final order of removal issued by the BIA. *Briseno-Flores v. Att'y Gen.*, 492 F.3d 226, 228 (3d Cir. 2007). The BIA's standard of review for an IJ's factual findings, such as evidence of persecution, is

---

[1] The BIA determined that Terentiev waived his right to appeal the IJ's denial of his application for asylum under 8 U.S.C. § 1158(b)(1) and his request for CAT protection under 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). Terentiev did not raise these issues on appeal, so we have no jurisdiction to review these claims.

3

one of clear error. 8 C.F.R. § 1003.1(d)(3). We review these findings of fact under the deferential substantial evidence standard. *See Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006).

The BIA may review and summarily affirm, or analyze in an independent opinion, the decisions of an IJ. *See* 8 C.F.R. § 1003.1(e)(4)–(6). When the BIA adopts an IJ's decision and reasoning, we review both rulings. *See Quao Lin Dong v. Att'y Gen.*, 638 F.3d 223, 227 (3d Cir. 2011). However, when the BIA adopts the IJ's decision after only relying on parts of the IJ's reasoning, as here, we only review the grounds relied on. *Chukwu v. Att'y Gen.*, 484 F.3d 185, 193 (3d Cir. 2007).

### III.

To be eligible for withholding of removal, applicants have the burden of proving that they will more likely than not face persecution on account of a protected ground—such as race, religion, nationality, membership in a particular social group, or political opinion—if returned to their country of origin. *See Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003). Applicants who can show that they suffered past persecution trigger a "rebuttable presumption of a well-founded fear of future persecution."[2] *Lukwago v. Ashcroft*, 329 F.3d 157, 174 (3d Cir. 2003); 8 C.F.R. § 208.16(b)(1).

The IJ correctly concluded that the discrimination, name-calling, and unfulfilled threats Terentiev faced did not rise to the level of persecution. *See Sioe Tjen Wong v.*

---

[2] This presumption is rebuttable if the IJ finds there has been a fundamental change in circumstances that undermines the applicant's fear of persecution, or if the applicant could avoid persecution by relocating to a different part of the country. *Lukwago*, 329 F.3d at 174.

4

*Att'y Gen.*, 539 F.3d 225, 234 (3d Cir. 2008) (holding that incidents of harassment and discrimination may only qualify if "sufficiently severe to constitute a pattern or practice of persecution").[3] Similarly, the IJ and BIA correctly indicated the lack of a nexus between past harm and fears of future harm because Terentiev failed to show that his Russian ethnicity was the central motive for his persecution and failed to prove he would be singled out for persecution due to his ethnicity.[4] *See Matter of L-E-A-*, 27 I. & N. Dec. 40, 43-44 (BIA 2017); *Matter of C-T-L-*, 25 I. & N. Dec. 341 (BIA 2010).

Additionally, Terentiev's reliance on the Georgian police's lack of follow-up to his reports does not rise to the level needed for persecution. Each time Terentiev contacted the police, they responded, albeit not in the exact manner he wished. As the BIA indicated, Terentiev had access to the police but did not avail himself to all of the protections that were available to him.

To demonstrate persecution or a likelihood of future persecution, Terentiev had to establish that persecution was or will be perpetrated "by the government or its agents," or, "by forces the government is unable or unwilling to control." *See Valdiviezo-*

---

[3] The BIA did not address the IJ's findings as to whether or not the discrimination Terentiev faced amounted to "persecution." Instead, the BIA affirmed the IJ's decision on the ground that there was attenuation between any past harm and potential future harm faced by Terentiev.

[4] The IJ inferred that Terentiev was a "target of generalized crime and robbery," rather than an ethnic target. The record points to other factors that could have led to animosity between Terentiev and his neighbors, such as the likely jealousy that was felt by his neighbors over his socioeconomic status and high income for the area. This point is bolstered by facts such as that when Terentiev was robbed, he was not badly injured, which is more suggestive of a desire to steal than any persecutory motive.

5

*Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011) (quoting *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007)). The evidence in the record shows that Georgian officials repeatedly responded to Terentiev's home. We cannot say on this record that the evidence compels a finding that Georgian officials are unable or unwilling to protect Terentiev from people or groups that may attempt to do him harm.

Finally, Terentiev's arguments of personal, rather than general, persecution also fail given that his wife and mother who were living with him—neither of whom is Russian—were also the subjects of these same incidents. In fact, Terentiev's similarly situated mother remains in Georgia unharmed. Therefore, Terentiev is unable to make any individualized showing that he would be singled out for persecution.

Given that the likelihood component of Terentiev's potential future persecution is a factual inquiry and not a legal one, we defer to the BIA unless the evidence compels a contrary conclusion. *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010). The BIA found no error in the IJ's finding that Terentiev's past persecution was not attributable to his Russian ethnicity and we agree.

Terentiev also argues that the IJ improperly limited his testimony. However, having reviewed the record, it is apparent that the IJ's management of Terentiev's testimony did not result in a "denial of the fundamental fairness" to which Terentiev is entitled. *Muhanna v. Gonzales*, 399 F.3d 582, 587 (3d Cir. 2005). We will deny the petition for review.