# Matter of Michael Alexander NELSON, Respondent

*Decided February 17, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Once an alien has been convicted of an offense that stops the accrual of the 7-year period of continuous residence required for cancellation of removal under section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a) (2006), section 240A(d)(1) of the Act does not permit such residence to restart simply because the alien has departed from, and returned to, the United States.

FOR RESPONDENT: Whitney Elliott, Esquire, Edison, New Jersey

FOR THE DEPARTMENT OF HOMELAND SECURITY: Alan Wolf, Senior Attorney

BEFORE: Board Panel: FILPPU, COLE, and PAULEY, Board Members.

FILPPU, Board Member:

This case concerns the question whether under the "stop-time" rule of section 240A(d)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(1) (2006), the clock can be reset by an alien's departure from, and reentry to, the United States after a conviction for a crime that would otherwise stop the accrual of continuous residence for purposes of determining eligibility for cancellation of removal under section 240A(a) of the Act. We hold that continuous residence cannot be restarted, at least in the absence of a waiver of inadmissibility in regard to the conviction. We must also address whether we are nevertheless constrained to reach a different outcome under the law of the United States Court of Appeals for the Third Circuit, the jurisdiction in which this case arises. Because we find that we are not so constrained, we will dismiss the respondent's appeal from the Immigration Judge's June 2, 2010, decision denying his application for cancellation of removal.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Jamaica who was admitted to the United States as a lawful permanent resident on November 3, 1994. As the Immigration Judge noted, the respondent testified that he visited Canada for 2 days in August 2000 and returned to the United States.

On April 9, 1999, the respondent was convicted of possession of marijuana in violation of section 221.25 of the New York Penal Law, based on an offense committed on or about February 20, 1999.[1]  He was also convicted of two controlled substance violations in New Jersey on May 6, 2008.

On November 26, 2008, the respondent was served with a Notice to Appear (Form I-862), which charged that he was removable pursuant to sections 237(a)(2)(A)(iii) and (B)(i) of the Act, 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (B)(i) (2006), as an alien convicted of an aggravated felony and a controlled substance violation.  The Notice to Appear was factually predicated on the respondent's 1994 admission as an immigrant and on his 2008 controlled substance convictions in New Jersey.  On September 8, 2009, the Department of Homeland Security ("DHS") issued a Form I-261 (Additional Charges of Inadmissibility/Deportability), which added the respondent's 1999 conviction as a factual allegation supporting his removability.

The Immigration Judge ruled that the respondent's 2008 convictions were not final for immigration purposes because they were on direct appeal in New Jersey.[2]  However, she determined that the respondent was removable under section 237(a)(2)(B)(i) of the Act as a result of his 1999 conviction. The Immigration Judge also denied the respondent's application for cancellation of removal under section 240A(a) of the Act because he failed to establish the requisite 7 years of continuous residence.  Specifically, she found that the respondent was admitted in 1994 and that under section 240A(d)(1) of the Act, his period of continuous residence ended in 1999 when he committed the drug offense that rendered him removable.  In making this finding, the Immigration Judge determined that the respondent was not permitted to start a new period of continuous residence upon his reentry to the United States in 2000.

On appeal, the respondent does not contest the Immigration Judge's finding that he is removable under section 237(a)(2)(B)(i) of the Act.  However, he argues that the Immigration Judge erred in denying his application for cancellation of removal based on her determination that he failed to demonstrate that he "has resided in the United States continuously for 7 years after having been admitted in any status," as required by section 240A(a)(2) of the Act.  In this regard, the respondent does not dispute that

---

[1] The Immigration Judge denied the respondent's request for an additional continuance to seek post-conviction relief related to his 1999 conviction, and the respondent has not challenged that determination on appeal.

[2] The DHS did not appeal from that determination.  However, both the DHS and the respondent have filed motions based upon subsequent developments regarding the respondent's 2008 convictions. The DHS's motion states that the respondent's appeal has been dismissed, while the respondent claims that a further appeal of his convictions has been taken.  In light of our disposition of this case, we need not resolve the issues raised in the motions.

he was convicted of an offense in 1999 that triggered the "stop-time" rule under section 240A(d)(1). He nevertheless contends that he is entitled to establish a new period of continuous residence, commencing upon his reentry to the United States in 2000.

## II. ANALYSIS

We agree with the Immigration Judge's conclusion that under section 240A(d)(1) of the Act, the period of time the respondent was in the United States after his conviction and subsequent reentry to this country cannot be counted toward the accrual of the 7 years of continuous residence required for cancellation of removal, since the clock does not start anew simply because an alien departs and reenters the United States following the commission of a triggering offense. Section 240A(d)(1), which sets forth the "stop-time" rule, provides in pertinent part as follows:

> Termination of Continuous Period
>
> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the alien is served a notice to appear under section 239(a), or (B) when the alien has committed an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest.

As we noted in *Matter of Mendoza-Sandino*, 22 I&N Dec. 1236, 1240 (BIA 2000), "This provision clearly states that the continuous physical presence or continuous residence 'ends' upon the occurrence of one of the specified events, whichever is earliest." We therefore held that an alien could not accrue a new 7-year period of continuous physical presence for suspension of deportation after the service of an Order to Show Cause, because section 240A(d)(1) of the Act provides for the termination of physical presence upon service of a charging document.

In reaching this conclusion, we compared the language of section 240A(d)(1) to that of section 240A(d)(2), which relates to the treatment of certain "breaks" in continuous physical presence resulting from brief absences from the country.[3] We found that in enacting these two provisions,

---

[3] We note that section 240A(d)(2) of the Act only relates to cancellation of removal under sections 240A(b)(1) and (2) of the Act for aliens who are not lawful permanent residents. It therefore has no direct application to the respondent's request for cancellation of removal under section 240A(a). Section 240A(d)(2) provides as follows:

(continued...)

Congress distinguished between actions that "end" continuous physical presence or residence and those that only temporarily interrupt the accrual of continuous physical presence by absence from the country for a certain period of time. *Id.* at 1240. Based on the language of both sections, we concluded that the service of a charging document and the commission of a specified crime were "terminating" events, after which continuous physical presence or continuous residence could no longer accrue. *Id.* at 1240-41.

Our interpretation of the statute was also supported by the legislative history of section 240A(d) of the Act. We noted various congressional reports in which the legislators recognized the difference between a temporary "break" in continuous physical presence resulting from a brief departure and the events that caused physical presence and residence to "terminate forever," namely the issuance of a charging document and the commission of a specified crime. *Id.* at 1242-43. The legislative history also made it clear that the legislators intended to remove the incentive for aliens to prolong their stay in this country to become eligible for immigration benefits. With this in mind, we concluded that it would be contrary to the intent of Congress to permit an alien to accrue a new period of time after the occurrence of one of the terminating events in section 240A(d)(1) of the Act.

Our decision in *Matter of Mendoza-Sandino* has been found by the Third Circuit to be entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Briseno-Flores v. Att'y Gen. of U.S.*, 492 F.3d 226, 231 (3d Cir. 2007). In *Briseno-Flores*, the court stated that "there is persuasive precedent to support" our interpretation of the statute and cited rulings of other circuit courts that were in agreement. *Id.* (citing *Tablie v. Gonzales*, 471 F.3d 60, 62 (2d Cir. 2006); *Peralta v. Gonzales*, 441 F.3d 23, 25 (1st Cir. 2006)); *see also Najjar v. Ashcroft*, 257 F.3d 1262, 1299-1330 (11th Cir. 2001); *Ram v. INS*, 243 F.3d 510, 517-18 (9th Cir. 2001); *McBride v. INS*, 238 F.3d 371, 377 (5th Cir. 2001); *Afolayan v. INS*, 219 F.3d 784, 789 (8th Cir. 2000). However, the court noted that our reasoning had been questioned by the concurring opinion in *Okeke v. Gonzales*, 407 F.3d 585 (3d Cir. 2005), an earlier decision of the

---

(...continued)

        Treatment of Certain Breaks in Presence

        An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

Third Circuit on which the respondent relies as support for his arguments on appeal.

The facts in *Okeke* differ from those in this case.  The alien there entered in 1981 as a nonimmigrant student, returned home, and then came back to the United States in 1983.  Upon reentry, he was arrested for possession of marijuana, to which he pled guilty.  He subsequently departed the country and was readmitted on his student visa in 1983 and 1984.  In 1997, he was placed in proceedings and was charged with removability based on his failure to maintain student status.  Thus, unlike the respondent, he was not charged on the basis of the commission of his crime.

The Third Circuit panel in *Okeke* issued three separate opinions.  The opinion of the court held that the alien was entitled to a new period of continuous physical presence, commencing upon his reentry to the United States.  Specifically, it distinguished *Matter of Mendoza-Sandino*, both on the facts and because it did not address the question whether a lawful reentry after the commission of a triggering criminal offense restarts the clock, relying instead on our decision in *Matter of Cisneros*, 23 I&N Dec. 668 (BIA 2004).[4]  *Okeke v. Gonzales*, 407 F.3d at 589-90.  Although the judge in this opinion found that reentry after a clock-stopping event such as the commission of a crime started the clock anew under the circumstances of that case, he specifically declined to express an opinion as to the outcome if the charging document had alleged that Okeke was removable on the basis of his controlled substance offense, rather than for the failure to maintain student status arising only after he had made a lawful reentry.  *Id.* at 590-91.[5]

---

[4]  In *Matter of Cisneros*, which, unlike this case, involved the question of accrual of continuous physical presence after the service of a charging document, we distinguished *Matter of Mendoza-Sandino* and held that the "stop-time" rule was not intended to extend to charging documents issued in an earlier removal proceeding.  We therefore held that an alien who had been deported and accrued more than 10 years after returning to the country could count that period of continuous physical presence to establish eligibility for cancellation of removal under section 240A(b) of the Act in a subsequent removal proceeding.  Our ruling in that case, which was based on a different factual scenario than that presented here, did not announce a broad proposition that reentries, legal or illegal, will always restart the clock.

[5]  The opinion did not discuss the impact of former section 212(a)(23) of the Act, 8 U.S.C. § 1182(a)(23) (1982), on the *substantive lawfulness* of Okeke's 1984 reentry as a nonimmigrant following his controlled substance conviction.  We express no opinion on whether the respondent could have reset the "clock" had he obtained a waiver under section 212(h) of the Act upon reentry, or had he been in new proceedings, following a prior removal for his marijuana offense, after admission on a new visa issued with a waiver for the offense.

The concurring opinion agreed with the result but interpreted our holding in *Matter of Cisneros* differently and found *Matter of Mendoza-Sandino* to be "incorrect."[6] *Okeke v. Gonzales*, 407 F.3d at 592-93 (Ambro, J., concurring). The dissent would have followed our decision in *Matter of Mendoza-Sandino* and concluded that Okeke's continuous physical presence ended when he was convicted of a drug offense, because the clock could not be restarted. *Id.* at 597.

We agree with the Immigration Judge that *Okeke v. Gonzales* is not binding in this case. Since the respondent has been charged in the Notice to Appear with the very crime that would terminate his continuous residence, the court's ruling, by its own terms, does not apply. *Okeke v. Gonzales*, 407 F.3d at 590-91. Moreover, given the fractured nature of the decision in *Okeke*, it would be difficult to ascertain a rationale that would be controlling outside of the facts of that case. In any event, the Third Circuit's more recent decision in *Briseno-Flores v. Attorney General of U.S.*, 492 F.3d at 231, found our reasoning in *Mendoza-Sandino* to be reasonable and entitled to deference.

In this case, the respondent's commission of the crime leading to his 1999 controlled substance conviction is a "stop-time" event for these removal proceedings. The Notice to Appear factually referenced his 1994 admission, and the Form I-261 specifically alleged his 1999 offense as support for the charge that he is removable as a convicted alien. Moreover, there is no claim that the respondent received a waiver in relation to his marijuana offense that would have allowed him to effect a substantively lawful reentry after his 2000 trip to Canada. *See* section 101(a)(13)(C)(v) of the Act, 8 U.S.C. § 1101(a)(13)(C)(v) (2006) (providing that a returning lawful permanent resident may be regarded as seeking admission if he has committed an offense identified in section 212(a)(2) of the Act, 8 U.S.C. § 1182(a)(2) (2006), and has not been granted a waiver or cancellation of removal); section 212(a)(2)(A)(i)(II) of the Act (providing that any alien who is convicted of a controlled substance violation is inadmissible). We therefore conclude that under our decision in *Matter of Mendoza-Sandino*, the clock could not be reset by the respondent's departure and return after his conviction. Any other reading of section 240A(d)(1) of the Act that would allow an alien to accrue a new period of continuous residence simply by departing and reentering the United States following the commission of a triggering criminal offense would undermine the intent of Congress, as expressed in the legislative history of the statute.

---

[6] In its subsequent opinion in *Briseno-Flores v. Attorney General of U.S.*, 492 F.3d at 231 n.6, the Third Circuit appeared to discount the concurring opinion in *Okeke v. Gonzales*.

### III.  CONCLUSION

For the reasons discussed above, we conclude that the respondent's criminal offense in 1999 terminated his continuous residence in the United States under section 240A(d)(1) of the Act.  Consequently, the period of time after his reentry to this country cannot be counted toward the accrual of the 7 years of continuous residence required for cancellation of removal under section 240A(a).  Therefore, the respondent is not statutorily eligible for that relief, and his appeal will be dismissed.

**ORDER:**  The appeal is dismissed.