**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1654
_____

MICHAEL ALEXANDER NELSON,
Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A044-843-940)
_____

Argued:  April 19, 2012
_____

Before: VANASKIE, BARRY and CUDAHY,[*] <u>Circuit Judges</u>

(Opinion Filed: May 22, 2012)
_____

Kristen Sawicki (Argued)
Richard H. Frankel, Esq. (Argued)
Drexel University
Earle Mack School of Law

_____

[*] Honorable Richard D. Cudahy, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1

3320 Market Street
Philadelphia, PA 19104

Counsel for Petitioner

Jeffrey L. Menkin, Esq. (Argued)
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

_____

OPINION OF THE COURT
_____

BARRY, Circuit Judge

Michael Nelson petitions for review of the decision of the Board of Immigration Appeals, which concluded that he had not accumulated the seven years of continuous residence in the United States necessary to be eligible for cancellation of removal under 8 U.S.C. § 1229b. We will deny the petition.

**I.**

Nelson is a native and citizen of Jamaica who was admitted to the United States as a lawful permanent resident on November 3, 1994. In early 1999, less than five years after his admission to the United States, Nelson pleaded guilty in New York state court to possession of approximately 16 ounces of marijuana ("the 1999 conviction").

In August 2000, Nelson visited Canada for two days. Although his 1999 conviction rendered him inadmissible to the United States, Nelson was nonetheless allowed to reenter the country through a border checkpoint. Following his

2

reentry, he did not leave the United States again and lived here without interruption.

On November 16, 2006, Nelson was arrested in New Jersey after attempting to retrieve a package containing a substantial amount of marijuana that had been mailed to a Sears Auto Center. In May 2008, he was tried by a jury in New Jersey state court and found guilty of attempted possession with intent to distribute marijuana in violation of N.J.S.A. §§ 2C:5-1, 2C:35-5b(10), & 2C:35-7.1 ("the 2008 convictions"). He proceeded to challenge these convictions on direct appeal.

On November 26, 2008, the Department of Homeland Security ("DHS") issued a Notice to Appear asserting that Nelson was removable because his 2008 convictions constituted aggravated felonies and controlled substances offenses pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and (B)(i). The Immigration Judge ("IJ") originally found Nelson removable based on these convictions, but later withdrew those findings after Nelson established that the convictions were on direct appeal and thus were not "final."

On September 8, 2009, DHS issued additional removal charges based instead on Nelson's 1999 conviction. Nelson, for his part, subsequently applied for cancellation of removal. After finding Nelson removable based on the 1999 conviction, the IJ denied his application for cancellation of removal, concluding that Nelson had not accrued the required seven years of continuous residence in the United States necessary to be eligible for that relief. In particular, the IJ found that Nelson's 1999 drug offense triggered the "stop-time" provision of 8 U.S.C. § 1229b(d)(1), and ended his period of continuous residence short of the seven-year statutory threshold. Furthermore, the IJ determined that Nelson was not permitted to start a new period of continuous residence based on his reentry to the United States following his two-day trip to Canada in 2000.

Nelson appealed to the BIA. On appeal, Nelson conceded his removability based on the 1999 conviction, but

3

argued that the IJ erred in denying his application for cancellation of removal for failure to meet the residence requirement. He did not dispute that his 1999 conviction was an event that interrupted his continuous residence. Rather, he argued that, based on this Court's decision in *Okeke v. Gonzales*, 407 F.3d 585 (3d Cir. 2005), he was entitled to establish a *new* period of continuous residence after his reentry to the United States in 2000.

On February 11, 2011, the BIA issued a precedential decision affirming the IJ and dismissing Nelson's appeal. *In re Nelson*, 25 I. & N. Dec. 410 (BIA 2011). The BIA distinguished *Okeke* and concluded that "the clock does not start anew simply because an alien departs and reenters the United States following the commission of a triggering offense." Because the BIA found Nelson removable based exclusively on the 1999 conviction, it refused to address the 2008 convictions or DHS's claim that Nelson's direct appeal from those convictions had been dismissed. Nelson petitioned for review of the BIA's decision.

## II.

We have jurisdiction to review the decision of the BIA under 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, and did not simply adopt the opinion of the IJ, we review only the BIA's decision as the final agency decision. *Sarango v. Attorney General*, 651 F.3d 380, 383 (3d Cir. 2011). However, to the extent the BIA deferred to or adopted the IJ's reasoning, we also look to and consider the decision of the IJ on those points. *See Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). We review the BIA's conclusions of law de novo, but give so-called *Chevron* deference to its interpretation of the Immigration and Nationality Act. *Id.* (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999)). "Under the familiar two-step *Chevron* inquiry, first, if the statute is clear we must give effect to Congress' unambiguous intent, and, second, if the statute is silent or ambiguous with respect to a specific issue, we defer to an implementing agency's reasonable interpretation of that statute." *De Leon-Ochoa v. Attorney General*, 622 F.3d 341,

4

348 (3d Cir. 2010).

**A.**

The relevant statute in this case is 8 U.S.C. § 1229b, which provides that aliens may be eligible for cancellation of removal if they meet certain requirements. The precise eligibility requirements depend on the alien's status as a permanent resident or a nonpermanent resident. With respect to permanent residents, the statute provides that:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
>
> > (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
> >
> > (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
> >
> > (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a).[1] The crucial provision for purposes of this petition is the requirement of a continuous seven-year residence in the United States.

With respect to the residency requirement, the statute contains a section on the "[t]reatment of certain breaks in presence." In particular, it states that "[a]n alien shall be considered to have failed to maintain continuous physical

---

[1] The requirements for nonpermanent residents are somewhat more onerous, although they also must show a continuous period in the country—described as continuous "physical presen[ce]" rather than continuous "residence." *Id.* at § 1229b(b)(1)(A).

5

presence . . . if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." *Id*. § 1229b(d)(2). More importantly for Nelson, however, the statute also contains a provision calling for the "termination" of an alien's continuous period of residence, stating:

> any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the alien is served a notice to appear under section 1229(a) of this title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States . . . or removable from the United States . . ., whichever is earliest.

*Id*. § 1229b(d)(1). This section is known as the "stop-time" provision of the statute.

**B**.

Both this Court and the BIA have analyzed and elaborated on the stop-time provision of § 1229b. In *In re Mendoza-Sandino*, 22 I. & N. Dec. 1236 (BIA 2000) ("*Mendoza*"), the BIA held that, once an alien's period of continuous presence or residence is terminated by the stop-time provision—through service of a notice to appear or commission of a specified offense—it does not restart, and the alien does not automatically begin accruing a new period following the cessation of the first one. In reaching that conclusion, the BIA focused on the language and structure of the statute, particularly the fact that the service of a notice to appear or commission of a crime are said to "*end*" the alien's period of continuous presence. The Board contrasted that with the provision of the statute identifying events that merely "*break*" the alien's period of continuous presence:

> Congress has distinguished between certain actions that "end" continuous physical presence,

*i.e.*, service of a charging document or commission of a specified crime, and certain departures from the country that only temporarily "break" that presence. Service of . . . a notice to appear is not included as an interruptive event under [the statute], which merely breaks continuous physical presence. Rather . . . such service is deemed to end an alien's presence completely. Therefore, a reading of [the statute] that would allow an alien to accrue a new period of continuous physical presence after the service of a charging document is not supported by the language of [the statute].

*Id*. at 1240. Accordingly, the BIA concluded "that the language of [the statute] reflects that service of a notice to appear . . . is not simply an interruptive event that resets the continuous physical presence clock, *but is a terminating event, after which continuous physical presence can no longer accrue.*" *Id*. at 1241 (emphasis supplied).

We have held that the *Mendoza* decision is reasonable and entitled to *Chevron* deference. *Briseno-Flores v. Attorney General*, 492 F.3d 226 (3d Cir. 2007).

## C.

As noted above, Nelson admits that he committed an offense in 1999 which triggered the stop-time provision and ended his residency period short of the seven-year statutory requirement. Applying *Mendoza* and *Briseno-Flores*, that residency period, once terminated, would not restart. Seeking to avoid this result, Nelson argues he should be deemed to have begun a new period of continuous residence after his 1999 conviction based solely on his reentry to the United States from Canada following a brief trip. Because the BIA ruled against him on this point, Nelson bears the burden of showing that the BIA's decision was either contrary to the unambiguous language of the statute, or an unreasonable interpretation of the statute. Nelson has failed to meet that

7

burden here.

**1.**

Nelson's first contention is that the plain language of the statute unambiguously provides for a new period of continuous residence to begin after an alien exits and reenters the country following his commission of a crime. In particular, he relies on the language of the cancellation of removal statute stating that a lawful permanent resident must have "resided in the United States continuously for 7 years *after having been admitted in any status.*" 8 U.S.C. § 1229b(a)(2) (emphasis supplied). Nelson argues that this language "makes clear that seven years of continuous residence following *any* admission will be sufficient . . . [and] a new admission equals a new period of continuous residence." (Petitioner's Br. at 43.) Nelson contends that his return from Canada in 2000 constituted a new "admission," and thus a period of seven years residence after that admission should qualify him for cancellation of removal regardless of the fact that he failed to acquire seven years residence after his initial admission in 1994.

We disagree with Nelson's characterization that the "after having been admitted in any status" language unambiguously shows a congressional intent to have the clock restart following reentry.[2] Viewed in context, the language

---

[2] The parties dispute whether Nelson was in fact "admitted" within the meaning of the statute when he returned from Canada. The government argues that he was not admitted because his 1999 conviction rendered him inadmissible to the country, and an alien's entry must be *substantively lawful* in order to fall within the meaning of the statute. *See* 8 U.S.C. § 1101(a)(13); *Gallimore v. Attorney General*, 619 F.3d 216, 224-25 (3d Cir. 2010). Nelson counters that substantive lawfulness is not required. Rather, he argues that the alien need only show that he was allowed into the country after inspection, *i.e.*, that his admission was *procedurally regular*. *In re Quilantan*, 25 I. & N. Dec. 285 (BIA 2010). We need not resolve this dispute here, however, because we disagree in

8

could also be subject to other reasonable interpretations. For example, an alternative interpretation is that the "after having been admitted in any status" language simply means that the seven-year period need not accrue entirely after admission *as a lawful permanent resident*. The "in any status" phrase could show congressional recognition that an alien may initially be admitted to the United States in some other status (*e.g.*, on a student visa, as a refugee, or some other nonimmigrant status) and receive an adjustment of status to a permanent resident sometime later. Under this interpretation, the statutory language merely clarifies that such an alien does not begin accruing time towards the seven-year period *only after* his adjustment to permanent resident status. Rather, the alien immediately begins accumulating time following his initial admission, regardless of the status.

Furthermore, Nelson's interpretation of the "after having been admitted in any status" language conflicts with the plain language of the stop-time provision itself, which distinguishes between certain events that merely break or interrupt the accumulation of the statutory period (after which a new period can restart) and events that terminate or end the accumulation of a continuous period. If Congress had intended the clock to restart after every reentry into the country, it could have said so explicitly. Therefore, we cannot agree that the statutory language is unambiguous on this point.

**2.**

Because the statutory language does not unambiguously provide for the beginning of a new period of continuous residence following reentry, Nelson can prevail only if he establishes that the BIA's interpretation is unreasonable. If the BIA's decision is reasonable, we must defer to it even if we would have adopted a different reading. *Yusupov v. Attorney General*, 518 F.3d 185, 198 (3d Cir. 2008).

---

any case with Nelson's argument that the statutory language is clear and unambiguous.

9

Nelson argues that the BIA's decision is unreasonable because it conflicts with our decision in *Okeke v. Gonzales*, 407 F.3d 585 (3d Cir. 2005). In that case, Anderson Jude Okeke, a Nigerian citizen, first entered the United States in 1981 pursuant to a student visa to attend Touro College. In 1983, after returning to Nigeria for personal reasons, Okeke attempted to reenter the United States and was arrested for possession of marijuana. Okeke pleaded guilty and received a sentence of five years probation. After returning from another trip to Nigeria in 1984, Okeke lived in the United States without interruption for about 13 years and overstayed his student visa. In 1997, the government served him with a notice to appear citing his 1984 entry to the country (not his 1981 or 1983 entries) and charging him with failing to comply with the terms of his student visa because he no longer attended Touro College. Okeke admitted the allegations in the notice, but filed an application for cancellation of removal. In the removal proceedings, the BIA concluded that Okeke could not demonstrate the continuous physical presence to qualify for cancellation of removal because his commission of a controlled substance offense in 1983 triggered the stop-time provision and no further physical presence could accrue after that point. Okeke appealed.

On appeal, a fractured panel of this Court disagreed with the BIA and granted the petition for review. Although the appeal resulted in three separate opinions, Nelson relies exclusively on Judge Garth's opinion. Judge Garth rejected the government's reliance on *Mendoza*—noting that it did not address the issue of reentry—and instead relied on *In re Cisneros-Gonzales*, 23 I. & N. Dec. 668 (BIA 2004) ("*Cisneros*"). Judge Garth read *Cisneros* as standing for the proposition that, if an alien exits and reenters the country after a clock-stopping event, he begins a new period of continuous residence or presence. Therefore, Judge Garth found that "[w]here, as here, there is (lawful) reentry after a clock-stopping event (*i.e.*, the commission of a controlled substance offense), the clock starts anew." *Okeke*, 407 F.3d at 590.

Although there is language in *Okeke* that undoubtedly

10

supports Nelson's argument, we cannot agree that the BIA acted unreasonably in refusing to follow the decision in this case. As the BIA correctly noted, the fractured nature of *Okeke* makes it difficult to articulate a controlling rationale that could be applied outside the specific facts of that case. Even if we were to conclude that Judge Garth's opinion represents the controlling rationale, his opinion was based heavily on his interpretation that reentry was the critical fact for restarting the clock in *Cisneros*. The BIA, however, has since rejected that interpretation, and concluded that *Cisneros* "did not announce a broad proposition that reentries, legal or illegal, will always restart the clock." *In re Nelson*, 25 I. & N. Dec. 410, 414 n.4 (BIA 2011). The BIA's interpretations and explanations of its own decisions are entitled to deference.

Moreover, Judge Garth himself expressly limited the reach of his opinion in *Okeke*, and noted that he was not addressing a case such as Nelson's:

> [T]his case is not about deporting an alien who had committed a crime. The [Notice to Appear ("NTA")] in this case made no reference to Okeke's alleged commission of the controlled substance offense. The Court expresses no opinion as to Okeke's immigrant status had such a charge been made, either when the action was allegedly committed or when the NTA was eventually filed.

*Okeke*, 407 F.3d at 590. Judge Garth emphasized that the NTA cited Okeke's entry into the country in May 1984 (*after* the drug offense) and made no mention of (1) his earlier entries into the country in 1981 and 1983; or (2) his controlled substance offense in 1983. Therefore, Judge Garth found: "*[p]ursuant to the express terms of the NTA, then, it is that final [May 1984] entry that should be considered in calculating [his] continuous physical presence.* To focus on events occurring prior to that time, when the NTA makes no mention of them, is both illogical and unjust." *Id.* at 591 (emphasis supplied). Nelson, in contrast, cannot credibly argue that it is "illogical and unjust" to consider his 1999

11

conviction when that conviction is explicitly referenced in the amended notice to appear.

For all of these reasons, the BIA did not act unreasonably in concluding that Judge Garth's opinion in *Okeke* did not control the outcome in this case. Rather, the BIA's conclusion that Nelson's reentry did not restart the clock is reasonable. The relevant portions of the statute are completely silent as to the effect of a reentry, save for the special rules providing that aliens who depart from the United States for extended periods of time break or interrupt their period of continuous residence/presence. 8 U.S.C. § 1229b(d)(2). If Congress had intended for an alien's departure from the United States to have any additional significance, it would have explicitly said so. Furthermore, there is no sound logical justification for attaching such significance to departure from the country. An alien who leaves for a two-day trip to Canada after committing a crime and lives in the United States for seven years after returning has no greater logical claim to be entitled to cancellation of removal than a similarly-situated alien who never leaves the country. Accordingly, the BIA's decision not to make such a distinction is reasonable and entitled to *Chevron* deference.