**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 12-1020

—————————

JAYAKUMAR VAMADEVAN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF THE UNITED STATES DEPARTMENT
OF HOMELAND SECURITY; JOHN MORTON,
as Assistant Secretary for Immigration And Customs Enforcement;
GARY MEAD, as Executive Associate Director, Enforcement and
Removal Operations; JOHN TSOUKARIS, as Director of the Newark,
New Jersey Field Office, Immigration and Customs Enforcement;
UNITED STATES DEPARTMENT OF JUSTICE;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
Respondents

———————————————————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(A094-003-849)
Immigration Judge: Honorable Dorothy Harbeck

———————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 5, 2012

Before: AMBRO, ALDISERT and NYGAARD, Circuit Judges

(Opinion filed: September 6, 2012)

—————————

OPINION

—————————

PER CURIAM.

In November 2009, Jayakumar Vamadevan, a native and citizen of India, sought to enter the United States on a B-2 visitor visa. The Department of Homeland Security ("DHS") deemed him inadmissible at the airport based on Vamadevan's concession that he intended to remain in this country despite not having an immigrant visa. Vamadevan expressed a desire to seek asylum. DHS served a notice to appear charging removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien not in possession of a valid entry document when applying for admission. In proceedings before an Immigration Judge ("IJ"), Vamadevan conceded his removability as charged and pursued asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ denied all relief, finding, inter alia, that Vamadevan failed to establish past persecution or a well-founded fear of future persecution in India. The Board of Immigration Appeals ("BIA") dismissed Vamadevan's appeal, explaining at some length its reasons for affirming the denial of relief. Vamadevan petitions this Court for review. We will deny the petition.[1]

Vamadevan raises four arguments before this Court. First, he contends that the

---

[1] This Court has jurisdiction under 8 U.S.C. § 1252(a). "Because the BIA issued its own opinion, and did not simply adopt the opinion of the IJ, we review only the BIA's decision as the final agency decision." Nelson v. Att'y Gen., 685 F.3d 318, 320-21 (3d Cir. 2012). "However, to the extent the BIA deferred to or adopted the IJ's reasoning, we also look to and consider the decision of the IJ on those points." Id. at 321. We review the agency's factual determinations for substantial evidence and will reject them only if "a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Mendez-Reyes v. Att'y Gen., 428 F.3d 187, 191 (3d Cir. 2005); see 8 U.S.C. § 1252(b)(4)(B). Factual determinations must be "supported by reasonable, substantial and probative evidence on the record considered as a whole[.]" Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003).

BIA erred in finding that he did not suffer past persecution based on threats that were made against him in India. The essential facts, which were established mainly through Vamadevan's credible testimony before the IJ, can be summarized briefly. Vamadevan is from the state of Kerala. In February 2009, he self-published a book entitled "Clouds of Dreams." In a chapter of the book titled "Fundamentalism," Vamadevan, by his own account, "criticized politicians in Islamic countries and the error of outward religiosity which lacks compassion for one's fellow man," "questioned the wisdom of circumcision and other rituals endorsed by Islam and other major religions," and "[d]irect[ed] his message against the misled people who justify terrorism[.]" Petitioner's Br. at 6-7. In March 2009, shortly after publishing his book, Vamadevan entered the United States on a visitor visa. Among other things, he planned to gain admission to a Bible college in this country. When that endeavor was unsuccessful, he returned to Kerala in August 2009.

In October 2009, Vamadevan answered a call on his cell phone from an unidentified individual. This individual angrily threatened to kill Vamadevan for criticizing Islam in his writings. In the days prior to receiving this call, Vamadevan had been promoting "Clouds of Dreams" at a book fair, and the stall next to his was occupied by an organization called the Kerala Islamic Mission. Out of fear that it would do more harm than good, Vamadevan chose not report the phone-call incident to the police. In addition, he had already made plans to leave India to again pursue admission to a Bible college in the United States.

In the evening of November 1, 2009, shortly before his scheduled departure from India, Vamadevan was confronted at a train station in his hometown by three unidentified

3

individuals on motorcycles. After confirming that Vamadevan had authored "Clouds of Dreams," one of the individuals angrily shouted, "How dare you criticize the Holy Koran?" Vamadevan's brother-in-law then approached the train station in his car, which prompted the three individuals to flee without physically harming Vamadevan. Vamadevan did not report the incident to the police, and he departed for the United States four days later.

The BIA agreed with the IJ that Vamadevan's mistreatment based on the threats he received from the above-mentioned unidentified individuals did not constitute "persecution" so as to support a grant of asylum. The BIA added that, even if these unidentified individuals belonged, as Vamadevan claimed, to an extremist group known as the Students Islamic Movement of India ("SIMI"), Vamadevan failed to show that the harm he experienced rose to the level of persecution.

Vamadevan contends that the threats amounted to persecution because they were imminent and sufficiently serious. This Court has held that a death threat, such as the one that Vamadevan received over the phone, can rise to the level of persecution, but the threat must be "so menacing as to cause significant actual suffering or harm." Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 341 (3d Cir. 2008) (quotation marks omitted); see also Li v. Att'y Gen., 400 F.3d 157, 164 (3d Cir. 2005) (explaining that "unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution"). We agree with the BIA that the incidents at issue in this case, while troubling, do not rise to the level required under the law to constitute a form of persecution. See Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006) ("[W]e have

4

refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien."). Vamadevan asserts that the BIA "mischaracterized the facts" and failed to "comprehend the full context of the threats," but we are satisfied from our review of the record that both the IJ and the BIA fully considered and accurately portrayed the evidence presented.

Vamadevan's second argument is that the BIA erred by rejecting his claim that he has a well-founded fear of persecution in the future by Islamic fundamentalists due to the publication of "Clouds of Dreams."[2] The BIA cited several reasons for rejecting this claim. It noted that Vamadevan never reported the past incidents of abuse to the police or other authorities, and it determined that Vamadevan failed to show that doing so would have been futile or led to further abuse. The BIA also discerned no clear error in the IJ's finding that the police in Kerala "'have been actively pursuing SIMI activists in recent years and reports indicate that this pursuit has become all the more intense following the spate of bombings which have occurred throughout India in 2008.'" A.R. at 4 (quoting IJ's decision). The BIA added that, while Vamadevan raised "some valid concerns on behalf of the Indian government's efforts in combating Islamic extremism," id., he failed to show that he faces a reasonable possibility of persecution from the SIMI or any other group, particularly in light of the absence of evidence that similarly situated individuals have reason to fear persecution from Islamic extremists. Finally, the BIA rejected

_____

[2] Because Vamadevan failed to establish past persecution, he is not entitled to a presumption that he has a well-founded fear of future persecution in India. See 8 C.F.R. § 1208.13(b)(1).

Vamadevan's assumption that Islamic fundamentalists have a "stronghold" in India.

Vamadevan argues that the BIA erred by faulting him for failing to report the past incidents to the police, and he contends that the evidence supports a finding that "the Kerala government either cannot or chooses not to control fundamentalist groups" like the SIMI. Petitioner's Br. at 22. Vamadevan has not shown, however, that the record *compels* a conclusion contrary to that reached by the BIA. Indeed, as even Vamadevan seems to acknowledge, see Petitioner's Br. at 19, the BIA's finding regarding recent efforts by the police in Kerala to pursue SIMI activists is grounded in the relevant evidence of record regarding current conditions in India. We conclude that substantial evidence supports the BIA's determination regarding those conditions.

Vamadevan's third argument is that he established a well-founded fear of future persecution due to his alleged desire to publish a new book, "India ... My Love," a collection of poems. Vamadevan contends that some of his poems "express a political opinion critical of the Indian government's repeated abuse of civilians in [Kashmir] and advocate the independence of Kashmir from India," Petitioner's Br. at 25, and he fears persecution by the Indian government should his poems be published. The BIA agreed with the IJ that Vamadevan's "planned efforts here do not satisfy his burden of proof." The BIA explained that, even assuming Vamadevan adequately corroborated his expressed desire to publish a second book, he failed to cite any country report indicating that individuals who write books on sensitive or political issues related to Kashmir face a reasonable risk of persecution by the government. The BIA noted the absence of objective evidence indicating that the Indian government would subject Vamadevan to

6

persecution for publishing his book of poems or for any other protected ground. Finally, the BIA observed that, despite receiving anonymous calls inquiring about Vamadevan, his wife and children have remained in India without experiencing threats or problems from the SIMI or any other potential persecutor.

Substantial evidence supports the BIA's determination. The 2008 State Department Human Rights Report on India reflects that the Indian government generally respected, in practice, the constitutional rights to freedom of speech and expression. "State Department reports may constitute substantial evidence." Ying Chen v. Att'y Gen., 676 F.3d 112, 116 (3d Cir. 2011) (quotation marks omitted). While Vamadevan suggests that his credible testimony alone was sufficient to establish that he will be persecuted if his poems are published, the BIA properly noted the absence of any country report or other objective evidence to support Vamadevan's fear of the Indian government.

Vamadevan's fourth and final argument is that the BIA erred because it failed sufficiently to review his claim for CAT protection.[3] The BIA affirmed the IJ's holding that Vamadevan "did not demonstrate a more likely than not probability of being tortured if removed to India," and it cited Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003), for the proposition that "reports of generalized brutality within a country do not necessarily allow an alien to sustain his/her burden under the [CAT]." Vamadevan contends that the BIA neglected to apply a de novo standard of review to the IJ's finding regarding the likelihood that he would be tortured in India, and he maintains that, in fact,

---

[3] Vamadevan has expressly waived any challenge to the BIA's denial of his application for withholding of removal, see Petitioner's Br. at 27 n.1, and therefore we do not review that issue.

7

he is likely to be tortured either by (a) Islamic fundamentalist in Kerala, or (b) the Indian government. We discern no error.

Nothing in the BIA's decision suggests that it applied an improper standard of review to the IJ's CAT determination. In addition, it is not error for the BIA, as it did here, to affirm an IJ's determination by citing the relevant pages in the IJ's decision which set forth the analysis that the BIA found persuasive. The BIA's citation to Zubeda, furthermore, reflects its decision to reject Vamadevan's argument for CAT protection based on "generalized" assertions about the prevailing conditions in India. As a procedural matter, therefore, we are satisfied that the BIA's analysis was sufficient. Moreover, on the merits, Vamadevan's CAT claim turned on the same evidence that he submitted in support of his asylum application. That evidence, for the reasons discussed earlier, does not compel the conclusion that Vamadevan more likely than not will be tortured by, or with the acquiescence of, Indian officials.

We have considered Vamadevan's remaining arguments but conclude that they are without merit and warrant no separate discussion. Based on the foregoing, we will deny the petition for review.