PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1152
_____

NARINDER SINGH,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                    Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A072-012-844)
Immigration Judge: Hon. Frederic Leeds
_____

Argued
September 16, 2015

Before:   FISHER, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: November 4, 2015)

_____

Nicholas J. Mundy   [ARGUED]
16 Court Street
Suite 2901
Brooklyn, NY  11241
        *Counsel for Petitioner*

Matt A. Crapo
Timothy Hayes
Brendan P. Hogan
Lindsay M. Murphy [ARGUED]
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Narinder Singh, a native and citizen of India, petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal from an order of an Immigration Judge ("IJ") concluding that he was both removable and ineligible for cancellation of removal under 8 U.S.C. § 1229b(a) due to his lack of seven years of continuous residence in the United States.  We will deny the petition.

## I. BACKGROUND

After entering the United States, Singh was granted asylum on July 1, 1993, and adjusted to lawful permanent resident status on June 1, 1994. On September 14, 2000, Singh was convicted in the United States District Court for the Northern District of Florida of conspiracy to counterfeit passports, counterfeiting and using visas, and mail fraud in violation of 18 U.S.C. § 371. He was also convicted of unlawful possession of forged, counterfeited, altered, and falsely made nonimmigrant United States visas in violation of 18 U.S.C. § 1546.

Singh later departed the United States and re-entered, as relevant here, on January 20, 2003.[1] In late October 2009, he applied for admission to the United States as a lawful permanent resident. He was instead detained by Immigration and Customs Enforcement on January 10, 2010. On January 19, 2010, he was served with a notice of removal charging him as an inadmissible arriving alien because he had

---

[1] The government concedes that this entry was "procedurally regular" but alleges that it was "not substantively lawful." (Government Supp. Br. at 12.) It appears that Singh was admitted in error, as his conviction should have rendered him inadmissible. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I) (alien convicted of crime involving moral turpitude is inadmissible); 8 U.S.C. § 1101(a)(13)(C)(v) (lawful permanent resident alien must seek admission if he has committed crime involving moral turpitude).

3

committed a crime involving moral turpitude, namely his 2000 counterfeiting conviction.[2]

After being served with his notice of removal, Singh appeared for a master calendar hearing before the

---

[2] The Notice to Appear stated:

The Service Alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of INDIA and a citizen of INDIA;

3. On June 1, 1994, you were accorded Lawful Permanent Resident status of the United States.

4. On or about September 14, 2000, you were convicted at the United States District Court, Northern District of Florida for the offense of Conspiracy to Counterfeit Passports; Counterfeit and Use Visas and Commit Mail Fraud in violation of Title 18, United States Code, Section 371 under case number 4:00cr32-004(S).

5. On or about September 14, 2000, you were convicted at the United States District Court, Northern District of Florida for the offense of Unlawful Possession of Forged, Counterfeited, Altered and Falsely Made Non-Immigrant United States Visas in violation of Title 18, United States Code, Section 1546 under case number 4:00cr32-004(S).

6. On or about October 30, 2009, you arrived at Newark Liberty International Airport in Newark, New Jersey, and applied for admission into the United States as a Lawful Permanent Resident.
(AR at 517.)

Immigration Court in Newark, New Jersey. Through counsel, he acknowledged proper service of the notice to appear, admitted all of the factual allegations therein, and conceded the sole charge of removability for his commission of a crime involving moral turpitude. Singh subsequently filed an application for cancellation of removal, and, through counsel, "indicated that he would not be seeking any alternative forms of relief." (AR at 153.)

The IJ denied Singh's application for cancellation of removal, in an interlocutory order, on the basis that Singh had not accrued the requisite seven years of continuous residence in the United States to make him eligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(a). Thereafter, the IJ held a hearing to determine whether Singh had any other form of relief available to him. Singh sought no such relief and, accordingly, the IJ issued a final decision on April 8, 2013, incorporating in full its prior interlocutory order.

On December 17, 2014, the BIA affirmed the IJ's decision. This timely petition for review followed.

## II. DISCUSSION[3]

### A. STANDARD OF REVIEW

"In reviewing the merits of Petitioner's claims, this Court reviews the agency's conclusions of law *de novo*, 'subject to established principles of deference.'" *Mendez-Reyes v. Att'y Gen.*, 428 F.3d 187, 191 (3d Cir. 2005) (quoting *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004)). These "principles of deference" include the deference owed to administrative agencies pursuant to *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). *See Wang*, 368 F.3d at 349. In general, the degree of deference owed to a BIA decision varies based upon the decision's precedential value. *See De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 348-51 (3d Cir. 2010). Here, the BIA decision was a single-member, non-precedential opinion. *See* 8 C.F.R. § 1003.1(g). Accordingly, we defer to its legal conclusions

---

[3] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We exercise jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Although the jurisdictional statute strips us of jurisdiction over "any judgment regarding the granting of relief under section … 1229b," 8 U.S.C. § 1252(a)(2)(B)(i), we have interpreted this provision to apply only with respect to discretionary aspects of the denial of cancellation of removal. *See Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 178 (3d Cir. 2003). Satisfaction of the continuous residency requirement is not such a discretionary decision and is thus subject to our review. *See Mendez-Reyes v. Att'y Gen.*, 428 F.3d 187, 189 (3d Cir. 2005); *Okeke v. Gonzales*, 407 F.3d 585, 588 n.4 (3d Cir. 2005).

only insofar as they have the power to persuade. *See Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014) ("At most, these decisions are persuasive authority.").[4]

### B. SINGH'S ELIGIBILITY FOR CANCELLATION OF REMOVAL

Singh is removable from the United States. His counterfeiting conviction, as he correctly concedes, qualifies as a "crime involving moral turpitude" that renders him inadmissible, and thus removable, from the United States. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I) (crime involving moral turpitude renders alien inadmissible); 8 U.S.C. § 1227(a)(1)(A) (alien who was inadmissible at time of entry is deportable). Crimes, like Singh's, involving allegations of dishonesty or fraud fall well within the recognized definition of "crimes involving moral turpitude." *See De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 635-36 (3d Cir. 2002); *see also In re Serna*, 20 I. & N. Dec. 579, 584 (BIA 1992) ("The offense of possession of counterfeit obligations of the United States

---

[4] We decide the petition "only on the administrative record on which the order of removal is based," 8 U.S.C. § 1252(b)(4)(A), and defer to the administrative findings of fact as "conclusive[,] unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). When the BIA issues its own decision on the merits and not a summary affirmance, we review its decision, not that of the IJ. *Sheriff v. Att'y Gen.*, 587 F.3d 584, 588 (3d Cir. 2009). The BIA has a corresponding responsibility to review the IJ's findings of fact only for clear error. 8 C.F.R. § 1003.1(d)(3)(i). Singh has not alleged that either the IJ or the BIA erred in any of their findings of fact.

has also been held to involve moral turpitude since the statute includes the intent to defraud … .").

Having conceded removability, the sole relief that Singh now seeks is cancellation of removal. "[T]he alien shoulders the burden of showing that [he] is eligible for cancellation of removal." *Pareja v. Att'y Gen.*, 615 F.3d 180, 185 (3d Cir. 2010). For a lawful permanent resident to be eligible for cancellation of removal, he or she must satisfy three requirements: (1) show lawful permanent resident status for not less than five years; (2) demonstrate continuous United States residency for seven years after having been admitted in any status; and (3) establish that he has not been convicted of an "aggravated felony." 8 U.S.C. § 1229b(a). The parties agree that Singh meets the first and third requirements. Singh also rightly concedes that his period of residence prior to the commission of his counterfeiting offense does not satisfy the seven-year requirement. The sole disagreement here concerns whether Singh's post-2003 time period – from the date of his re-entry on January 20, 2003 to the service of his notice to appear on January 19, 2010 – satisfies the seven-year requirement.[5]

---

[5] As these dates make apparent, it is arguable that Singh fell one day short of satisfying the seven-year requirement, regardless of the other issues in the case. Given the unique closeness of the timing in Singh's case, the determination of timeliness depends upon how one counts a one-year period for the purposes of eligibility for cancellation of removal. *Compare United States v. Hurst*, 322 F.3d 1256, 1259-60 (10th Cir. 2003) (applying the "anniversary method," in which "the last day for instituting the action is the anniversary date of the relevant act"), *with Habibi v. Holder*,

To be eligible for cancellation, the alien must have "resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a)(2). The seven-year clock starts to run when the alien is "admitted" to the United States. Such admission is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "The 7-year clock of § 1229b(a)(2) thus begins with an alien's *lawful* entry." *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2015 n.1 (2012) (emphasis in original). When the continuity clock stops is governed by another subsection of the cancellation statute, termed the "stop-time rule." This rule provides that continuous residency periods end either "when the alien is served a notice to appear under section 1229(a) of this title[;] or … when the alien has committed an offense … that renders the alien inadmissible … or removable … whichever is earliest." 8 U.S.C § 1229b(d)(1).

---

673 F.3d 1082, 1087 (9th Cir. 2011) (describing the "calendar method," in which years are measured as "consecutive 365-day period[s] beginning at any point" (internal quotation marks omitted)). Here, unlike in the typical case, the choice of method actually matters: under the anniversary method Singh would fall one day short, and under the calendar method he would have one day to spare. The only two cases cited by the parties, and the only two cases of which we are aware, relied upon the calendar method in the context of measuring an alien's period of physical presence in the United States. *See Minasyan v. Mukasey*, 553 F.3d 1224 (9th Cir. 2009); *Lagandaon v. Ashcroft*, 383 F.3d 983 (9th Cir. 2004). Because we deny Singh's petition on other grounds, we need not choose between the two approaches.

As Singh concedes, and as the BIA properly found, his 2000 counterfeiting conviction was a clock-stopping event. Because of that conviction, both the IJ and BIA concluded that Singh could not begin a new period of continuous residence after his 2003 readmission. By their reasoning, Singh's commission of a crime involving moral turpitude not only stopped the clock as to his preceding period of residency, but permanently prevented the clock from ever re-starting as to a later period of residency. Singh challenges that conclusion.

In *Okeke v. Gonzales*, 407 F.3d 585 (3d Cir. 2005), we recognized one situation in which the seven-year period could potentially re-start after commission of a clock-stopping crime. The alien in that case, a native and citizen of Nigeria, entered the United States as a non-immigrant student in 1981, returned home to Nigeria, and then returned to the United States in 1983. *Id*. at 586. Upon re-entry, he was arrested for possession of marijuana, to which he pled guilty and received a sentence of five years' probation. *Id*. He subsequently departed the United States and was readmitted on a student visa in 1984, and lived here without interruption thereafter. *Id*. In 1997, he was charged with removability based on his failure to maintain his student status, per the terms of his student visa. *Id*. at 586-87. He sought cancellation of removal. The BIA held, as it has here, that the commission of a clock-stopping offense "is not simply interruptive of the period of continuous physical presence, but is a terminating event, after which no further continuous presence can accrue for purposes of cancellation of removal." *Id*. at 587.

We reversed. Although we emphasized that multiple circuits had deferred to the BIA's determination that the clock

generally cannot start anew, we distinguished those cases on the basis that none "involved an individual who left the United States and reentered." *Id*. at 589. We cited the alien's re-entry as the "critical fact for restarting the clock," *id*. at 590, and drew a bright line between those who remain in the United States and those who re-enter after a clock-stopping event, rendering a seemingly-broad holding in favor of those who re-enter: "Where, as here, there is (lawful) reentry after a clock-stopping event (*i.e.*, the commission of a controlled substance offense), the clock starts anew."[6] *Id*. Despite that language, we noted that the case then at hand – unlike Singh's – was "not about deporting an alien who had committed a crime" because the notice to appear "made no reference to Okeke's alleged commission of the controlled substance

---

[6] We would later criticize this reasoning in *Nelson v. Att'y Gen.*, 685 F.3d 318, 325 (3d Cir. 2012), noting that "there is no sound logical justification for attaching such significance to departure from the country." That observation rings true. Indeed, fact patterns like Singh's and that in *Okeke* (*i.e.*, an alien who has committed a clock-stopping offense and returned to the country through regular channels and remained for an extended period) should not exist, because the alien who re-enters the United States under such circumstances is actually inadmissible. *See supra* n.1. As the government admits, Singh did not sneak into the country; he was let in. In Singh's case, not only was his procedurally-regular entry on January 20, 2003 substantively unlawful, but it also occurred while he was serving a term of federal supervised release (for his 2000 conviction). The legal question presented – whether the continuity clock can re-start – only needs answering because of the erroneous admission of an inadmissible alien.

offense." *Id*. According to the notice he received, Okeke was removable, rather, because he had overstayed his student visa. The notice to appear did not allege removability on the basis of the crime that also stopped the clock, and the *Okeke* Court "expresse[d] no opinion" as to what effect the crime's inclusion in the notice to appear would have had on its decision. *Id*.

We addressed just such a circumstance in *Nelson v. Attorney General*, 685 F.3d 318 (3d Cir. 2012). In that case, a native of Jamaica was admitted to the United States as a lawful permanent resident in November 1994. *Id*. at 319. Less than five years later, in 1999, he pled guilty to marijuana possession. *Id*. at 319-20. He later visited Canada for two days, and was then allowed to re-enter the United States, where he lived without interruption for the next eight years. Thereafter, the Department of Homeland Security filed a notice to appear alleging his removability on the basis of his 1999 conviction. He applied for cancellation of removal, contending that *Okeke* controlled. *Id*. at 320. The BIA disagreed, distinguishing *Okeke* on the basis of the factual distinction that *Okeke* itself had identified – that Nelson had been charged in the notice to appear with the very crime that also terminated his continuous residence. *Id*. We affirmed, holding that the BIA's interpretation of the statute was reasonable and therefore entitled to *Chevron* deference. Like the BIA's decision here, our opinion in *Nelson* emphasized that the crime that terminated his period of continuous residence was the basis for the alien's removal in that case, unlike in *Okeke*, in which the alien was removable because he had overstayed his student visa. As the *Okeke* Court had expressly drawn that distinction in its opinion, *Nelson* held that the distinction would now be dispositive.

12

The case at bar is controlled by *Nelson*. Unlike the alien in *Okeke*, and like the alien in *Nelson*, Singh was charged in his notice to appear with being removable on the basis of his clock-stopping offense. *See supra* n.2. Singh does his best to analogize his case to *Okeke* – by citing his repeated re-entry into the United States and his lack of criminal record aside from his 2000 conviction – but neither of those factual distinctions was cited in *Okeke* or *Nelson* as any part of the basis of those decisions. It was the contents of the notice to appear that formed the dispositive difference between *Nelson* and *Okeke*. We are thus bound by *Nelson*, and the BIA's holding to that effect merits deference.[7]

---

[7] The BIA's decision in *Matter of Nelson*, 25 I. & N. Dec. 410 (BIA 2011), to which we then deferred in the controlling *Nelson* case, is not without its flaws. For one, *Matter of Nelson* is troubling insofar as a three-member panel of the BIA imposed a stark limitation on a prior *en banc* BIA decision, *In re Cisneros-Gonzalez*, 23 I. & N. Dec. 668 (BIA 2004), which had left open the possibility that there might be other circumstances in which § 1229b might permit multiple periods of continuous residence. *See Matter of Nelson*, 25 I. & N. Dec. at 414 n.4. Even if the BIA panel was somehow free to limit its own *en banc* decision, it was still bound by the decision of this Court in *Okeke*, which broadly held that lawful re-entry after a clock-stopping event re-starts the seven-year clock. *See Okeke*, 407 F.3d at 591. As support for its holding, *Matter of Nelson* relied primarily upon two cases – *In re Mendoza-Sandino*, 22 I. & N. Dec. 1236 (BIA 2000) and *Briseno-Flores v. Att'y Gen.*, 492 F.3d 226 (3d Cir. 2007) – neither of which involved an alien who left and re-entered the United States, the critical fact underlying *Okeke*

13

Because *Nelson* controls, Singh's continuous residency clock stopped in 2000 when he committed his crime involving moral turpitude and could never re-start. Thus, he could not begin to accrue a period of continuous residency when he re-entered the United States in 2003, and he is,

---

that was also present in *Cisneros*. *See Matter of Nelson*, 25 I. & N. Dec. at 413.

Also, by making any clock re-start dependent on the contents of a later notice to appear, *Matter of Nelson* hinges such a re-start on an event that may happen only many years after the re-entry at issue. Applying the logic of *Nelson* (as we must), Singh's clock did not re-start in 2003 only due to the contents of a 2010 notice to appear. It would make more sense – and be more predictable – if the re-starting of the clock were instead contingent on events contemporaneous to re-entry.

Finally, it seems formalistic to differentiate between *Okeke* and *Nelson* on this basis when the aliens in both cases agreed that they had been convicted of crimes that rendered them removable. The only real difference between them is that the alien in *Okeke* was actually in a legally worse position, since he had a second basis for removal (overstaying his student visa). Under the reasoning of *Matter of Nelson*, it appears that the alien in *Okeke* only won because the typist of his notice to appear did not catch, or care to include, his conviction as a basis for removal. It is odd to condition the satisfaction of the continuity rule – a rule designed to ensure that an alien has a sufficiently strong connection to the United States – on the diligence of the person writing the notice to appear rather than on the actual actions of the alien in question. It would behoove the BIA to provide some clarity in this area.

accordingly, ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(2).

**III.    CONCLUSION**

For the foregoing reasons, we will deny Singh's petition for review.